**Salem**

R. LYN WALKER

v.

COMMONWEALTH OF VIRGINIA

No. 1133-85

Decided June 2, 1987

COUNSEL

Thomas C. Spencer, for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**HODGES, J.** — R. Lyn Walker appeals his convictions for breaking and entering and grand larceny arguing that the convictions should be reversed due to violation of his rights to a speedy trial and his right to receive exculpatory evidence from the Commonwealth. We cannot agree with his contention that the delay between his conviction and sentencing denied him his speedy trial rights but reverse the convictions due to the Commonwealth's failure to provide exculpatory evidence which appellant was entitled to and which he specifically requested.

On September 14, 1980, Walker was arrested and charged with breaking and entering the dwelling of William Whitten on September 14, 1980, with intent to commit larceny and with grand larceny from the Whitten home the same day. In addition, he was charged with breaking and entering the dwelling of Mr. and Mrs. B. S. Clark on March 11, 1980, with intent to commit larceny and with grand larceny from that residence. Both crimes allegedly took place in Rockbridge County, Virginia. Walker's alleged accomplice, Charles Ernest Hunnell, was arrested the same day as the defendant.

On February 2, 1981, a grand jury indicted Walker on all four charges. On March 12, 1981, he filed motions for discovery,[1] ex-

---

[1] The pertinent portions of the motion for discovery were as follows: that the prosecution and police produce for viewing all tangible evidence, and all documents, maps or charts to be introduced by the Commonwealth.

The motion for exculpatory evidence requested the following information: any statements or testimony by witnesses for the Commonwealth which conflict with prior statements or testimony including but not limited to statements taken from Charles Hunnell; any and all inducements or promises, oral or written, made to witnesses for the Commonwealth concerning their testimony at trial, or all other matters which otherwise affect their credibility, including but not limited to any plea agreement with Charles Hunnell; and all evidence or information in possession of the police or Commonwealth's Attorney which tends to exculpate defendant.

culpatory evidence, and separation of the "Clark" charges from the "Whitten" charges for trial. By letter dated March 16, 1981, the Commonwealth's Attorney for Rockbridge County informed defense counsel as follows:

As of this time, I am unaware of any exculpatory evidence. I have absolutely no intention of providing you with any statement taken from Charles Ernest Hunnell. Furthermore, I have no intention of providing you with any information requested in the Motion for Discovery or the Motion for Exculpatory Evidence in that there is none that you are entitled to under the rules of Court or under Virginia law.

On April 30, 1981, his trial date, Walker filed a motion to compel discovery, and a motion in limine.[2] After hearing argument on defendant's motions, the court instructed the Commonwealth to give defendant the evidence or information to which he was entitled. In addition, the court excluded from evidence certain maps and pictures which the Commonwealth failed to divulge or allow defendant to view. Over the Commonwealth's objection, the court entered an order granting defendant's motion to sever the "Clark" counts from the "Whitten" counts for trial. The court also granted the motion in limine. Walker was then tried on the "Whitten" charges.

The main witness against Walker was his alleged accomplice, Charles Hunnell, who testified generally about the pair's method of operation. He testified that Walker remained in the truck at the Whitten home while he checked to see if anyone was home, cut the phone line and proceeded to break into the house through a window. Hunnell then went through the rooms collecting everything of apparent value. During his direct testimony, Hunnell denied he ever told a different story of the events that day, and admitted that he had made a "deal" with the Commonwealth in exchange for his testimony in different jurisdictions. He acknowl-

---

[2] The motion in limine noted that Charles Ernest Hunnell would probably provide the chief evidence against Walker and that the Commonwealth's Attorney for Rockbridge County had assumed a leadership role in coordinating plea agreements in various jurisdictions on behalf of Hunnell. Walker asked the court to direct the Commonwealth's Attorney to instruct Hunnell not to mention the fact that the accused had been charged or convicted in any other jurisdictions.

edged that he had been convicted of a felony, and stated that he understood the terms and conditions of the plea agreement he had entered into in connection with his testimony against Walker.[3] His plea agreement with Rockbridge County had been tendered to, accepted and filed by the court on February 11, 1981. When cross-examined, Hunnell testified he had been convicted of one felony prior to 1980 and three after 1980 which were "involved in all of this . . . ." The following exchange then took place between Hunnell and Walker's counsel:

Q: What is the sentence that you have received in your plea agreement with the Commonwealth in exchange for your testimony today?

A: Here in this county?

Q: Yes.

A: Six years. I agreed to tell the truth, turn state's evidence
. . . .

\* \* \* \* \* \*

Q: There is a plea agreement of record that indicates you are to receive a sentence of 20 years and it would all be suspended after you have completed your agreement to testify. Do you deny that?

A: It's news to me.

\* \* \* \* \* \*

Q: Now I ask you Mr. Hunnell, do you still believe that your agreement with the Commonwealth is for you to serve six years?

A: Yes sir.

---

[3] Hunnell's plea agreement with the Commonwealth's Attorney of Rockbridge County provided that Hunnell would be sentenced to twenty years in the penitentiary all of which was to be suspended and Hunnell placed on probation *after* he testified for the Commonwealth in Rockbridge County and all other jurisdictions (approximately 16) and sentencing would be delayed with defendant remaining in jail until he had finished testifying in all jurisdictions against Walker and others.

Q: Then this agreement you signed is not true?

A: I signed that agreement.

Q: This agreement provides that you are to be sentenced to 20 years in the penitentiary and that it is to be suspended and that you are to be placed on probation after you complete the testimony you have agreed to give?

A: That was to run concurrent with what I already have, six years.

Q: Then that six years is from another jurisdiction, is that true?

A: That's true.

Q: And you don't know if any of that from another jurisdiction is to be suspended?

A: That is not to be suspended.

Q: But here, in Rockbridge County, all of your sentence is to be suspended?

A: That's true, but there I have to serve the full six years.

After Hunnell testified, the Commonwealth called Captain Spence of the Rockbridge County Sheriff's department, one of the investigators of the Whitten break-in. Following his investigation, he talked with Hunnell and advised him of his *Miranda* rights. Hunnell did not incriminate either himself or Walker and denied having been in Rockbridge County the day of the Whitten break-in. Two days later he did make a statement about his involvement when he was brought to the Lexington Motel where he met with Captain Spence, an investigator from Botetourt County, and the sheriff of Bedford County. While Spence said he knew Hunnell had reached an agreement with officials in Botetourt County in exchange for his testimony, he claimed he did not know what the terms actually were. Yet he testified that he told Hunnell "that after talking to the Commonwealth that he might receive . . . that he would receive the same agreement in this county that he had in Botetourt County." After this promise from Spence, Hunnell

agreed to testify in Rockbridge County.

Norman Sprinkle, Sheriff of Botetourt County, was the only witness called by Walker. Sheriff Sprinkle said that on September 16, 1980, he and Hunnell discussed the possibility of Hunnell testifying about certain crimes. Hunnell told the sheriff he could solve a number of crimes in Botetourt County and other jurisdictions. Sprinkle asked Hunnell what he would want in exchange and Hunnell said he wanted a suspended sentence. After discussing the situation with the Commonwealth's Attorney of Botetourt County, Sprinkle was told to proceed with the case. He testified further that prior to telling Hunnell that the Commonwealth had agreed to his request, Hunnell had not given him any evidence about anyone but agreed to testify after being promised a suspended sentence.

The jury found Walker guilty of breaking and entering the Whitten home with intent to commit larceny, and grand larceny. It fixed his punishment at three years on each count, a total of six years. After the jury was discharged, defendant moved the court to set aside the verdict; the court denied the motion. The court did grant his motion for a continuance to allow filing of post-trial motions.

The defendant and the Commonwealth's Attorney for Rockbridge County entered into a plea agreement on June 3, 1981, for the "Clark" charges. In return for a guilty plea, Walker would receive a forty year sentence in the penitentiary:

> [p]rovided that so much of said forty years as equals the time said defendant has been sentenced to serve in other jurisdictions of the Commonwealth as of the time of approval of this agreement by the court on similar offenses committed within the last two years shall run concurrently with such time said defendant has been sentenced to in such other jurisdictions.

The court neither accepted nor rejected this agreement but took it under advisement pending coordination with other jurisdictions.

By joint motion of counsel, the court, on December 16, 1981, continued the Whitten case generally pending disposition of matters in other jurisdictions.

On September 1, 1982, Walker wrote the clerk of the Circuit Court of Rockbridge County and requested copies of all warrants, indictments, plea agreements, and judgment and/or sentencing orders. The clerk sent copies of the documents to Walker and informed him that the cases were still pending since he had not yet been sentenced.

Approximately three weeks later, the defendant moved for dismissal of conspiracy charges handed down by a grand jury on May 1, 1981, which were based on the "Clark" and "Whitten" break-ins and larcenies previously charged against him. His *pro se* motion alleged that the Commonwealth had failed to try him within the time mandated by Code § 19.2-243.

On October 26, 1983, Walker's counsel wrote the Commonwealth's Attorney that it was his understanding that Walker was to be brought to court on November 14, 1983, to resolve whether the Commonwealth's Attorney would accept the plea agreement previously tendered. On April 20, 1984, the Commonwealth filed a praecipe requesting the case be set for a pre-trial conference in May of 1984, and filed another on September 13, 1984, requesting the matter be put on the docket so that a trial date could be set for the "Clark" charges.

On September 28, 1984, Walker filed a motion asking leave to withdraw the proposed plea agreement dealing with the "Clark" charges and for reasonable time to file further motions on the breaking and entering and grand larceny convictions obtained in April of 1981. The court granted the motions.[4] On November 9, 1984, defendant filed a motion requesting a copy of the April 1981 trial transcript for preparation of post-trial motions; the motion was granted November 29, 1984.

On January 25, 1985, the clerk of the circuit court informed the Commonwealth that the trial transcript would be filed in about a week. On April 11, 1985, the court notified defense counsel that more than thirty days had passed since the filing of the transcript, no post-trial motions had been filed, and the court therefore assumed none would be forthcoming. Defense counsel then filed for

---

[4] The order tendered to the court recited that "[a]ll continuances of this matter have been caused by the Defendant." The defendant notified the court that he did not agree to this statement and that it had been added by the Commonwealth. The court excised this statement from the order which it entered.

an extension of time and filed his motions on April 15, 1985.

Walker's two motions requested that the court: (1) dismiss the charges against him since his right to a speedy trial and access to the Supreme Court of Virginia had been violated due to an inordinate amount of delay before sentencing, or (2) vacate the verdict and order a new trial after compliance by the Commonwealth with the discovery order originally granted prior to trial in 1981. On August 8, 1985, the court heard argument on defendant's motions, denied them, and sentenced him to three years in the penitentiary on each count in accordance with the jury's recommendations.

On appeal, Walker contends that the delay between his trial and sentencing denied him his right to a speedy trial, and that the failure of the Commonwealth's Attorney to comply with his discovery requests impermissibly interfered with preparation of his cross-examination of Charles Hunnell. He asserts that the Commonwealth's failure to comply was prejudicial to his case since Hunnell was the main witness against him, and he was effectively denied a fair trial.

## I. Speedy Trial

Walker argues that the delay between his trial on April 30, 1981, and the sentencing date, August 8, 1985, denied him his right to a speedy trial. He concedes that he was tried in a timely fashion, but contends that the constitutional rights to a speedy trial encompass being sentenced in a timely manner. He blames the delay on the Commonwealth, contending that the Commonwealth's Attorney continued to promise to carry out the "Clark" plea agreement even after it was clear he could not do so. The terms of the "Clark" agreement would have included the sentences received in the "Whitten" case. Walker asserts that a delay of four years and three months is *prima facie* unreasonable and a denial of his constitutional rights.

To support his speedy trial claim Walker relies on two Virginia cases, *Butts v. Commonwealth*, 145 Va. 800, 133 S.E. 764 (1926), and *Fowlkes v. Commonwealth*, 218 Va. 763, 240 S.E.2d 662 (1978). In *Butts*, the Court stated that a delay of thirty-three months between conviction and sentencing amounted to a violation of the speedy trial guarantee. The defendant was convicted of

attempted robbery on February 12, 1923, moved for a new trial after the verdict was rendered, but his motion was not ruled on until November 21, 1925, when the court denied the motion and sentenced him to two years in the penitentiary. The Supreme Court noted that the record disclosed no reason for the delay between verdict and sentencing but held that defendant's failure to assert his right amounted to a waiver.[5] "The withholding of judgment by the trial court for that length of time, without reason or excuse therefor, was equally a violation of the constitutional right of the accused, and if he had claimed his right it should have been accorded him; but he did not do so, and must be deemed to have waived it." 145 Va. at 809, 133 S.E. at 767.

In *Fowlkes*, the defendant was arrested on November 14, 1974, released on bond the same day, but not tried for the alleged crime until February 1, 1977. Between his arrest and the day he was tried, eight continuances were granted to the Commonwealth over defendant's objection. The Virginia Supreme Court applied the four factors identified by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972): the length of the delay; the reason for the delay; the defendant's assertion of the right; and the prejudice to the defendant. 407 U.S. at 530. Finding that the claim was timely asserted and that the delay was unjustified and inordinate, the Supreme Court reversed the conviction. 218 Va. at 771, 240 S.E.2d at 667. Both *Barker* and *Fowlkes* dealt with pre-trial delay and not with delay between trial and sentencing.

The Commonwealth argues that our analysis of Walker's complaint should be limited to the question whether he was denied due process of law. The Commonwealth contends that to prevail under the due process standard the defendant must prove that he was actually prejudiced by the sentencing delay. Under the speedy trial theory prejudice would be *one* factor for consideration.

In *United States v. Marion*, 404 U.S. 307 (1971), the United States Supreme Court recognized that inordinate delay between arrest, indictment and trial might hinder a defendant's abil-

---

[5] *Butts* was decided before the Supreme Court held that a defendant's failure to raise a speedy trial contention at an early date did not amount *per se* to a waiver. When a defendant first raises the question is simply one of four factors to be considered in a speedy trial analysis. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

ity to defend himself but stated:

> [T]he major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense . . . . Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

*Id.* at 320.

> The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

*United States v. MacDonald*, 456 U.S. 1, 8 (1982).

 A number of states have specifically held that the sixth amendment right to a speedy trial does not apply to delay between conviction and sentencing. *State v. Johnson*, 363 So. 2d 458, 460-61 (La. 1978); *State v. Drake*, 259 N.W.2d 862, 866 (Iowa 1977); *see also State v. Steelman*, 612 P.2d 475, 478 (Ariz. 1980). The Louisiana and Iowa courts both noted that while the United States Supreme Court in *Pollard v. United States*, 352 U.S. 354 (1957), assumed *arguendo* that sentencing was a part of the speedy trial guarantee, it has never definitively held that it is. Both state courts traced the concerns and rights which the sixth amendment right to a speedy trial seeks to protect, both from the accused's and society's view point, and found those concerns inapplicable after conviction. Other courts have also addressed the divergent interests between being afforded a speedy trial as opposed to being sentenced in a timely manner.

> [T]he sensitive concerns which surround the necessity of a speedy trial on the merits of a case generally are not applicable when the delay is between conviction and sentencing. There exists here no concern over "oppressive incarceration" before trial, "anxiety" over public accusation before trial, or any "impairment" over the petitioner's ability to defend himself.

*Brooks v. United States*, 423 F.2d 1149, 1152-53 (8th Cir. 1970), *cert. denied*, 400 U.S. 872 (1971).

> [W]hen the *Barker* court talked in terms of anxiety and concern of the accused, it was referring to a presumptively innocent defendant who must exist under a cloud of suspicion and uncertainty. But when the defendant is found guilty his presumption of innocence dissipates. While he awaits sentencing he may still be under a cloud, but it is not a cloud of "public accusation," but a cloud of public guilt generated by the finding beyond a reasonable doubt that he did commit the wrongs alleged. The major concerns of the speedy trial guarantee either do not apply after conviction or are of only speculative moment. Any real prejudice suffered by an individual as a result of an unreasonable delay in sentencing may be remedied under due process principles.

*Erbe v. State*, 25 Md. App. 375, 386, 336 A.2d 129, 136 (1975) (citations omitted).

We believe that whatever right a defendant has to be sentenced in a timely fashion does not derive from the constitutional rights to be tried expeditiously. Therefore the question is whether Walker was so prejudiced by the delay in his sentencing that he was denied due process of law. The first time Walker raised the contention was April 15, 1985, when he filed a motion to dismiss due to denial of a speedy trial and access to the Supreme Court of Virginia. Thus, almost four years passed between the defendant's conviction and the time he first complained of the delay. From the date of trial until he filed his motion to dismiss, Walker either affirmatively requested, joined the Commonwealth in requesting, or failed to object to continuances and delays following conviction. The first continuance was granted the date of trial, April 15, 1981, on defendant's motion for time to file post-trial motions; the

second, granted June 3, 1981, was to allow the court to rule on the post-trial motions; and the third, entered December 16, 1981, was on joint motion of the parties pending disposition of matters in other jurisdictions affecting the proposed plea agreement on the "Clark" charges.

In addition, the defendant has alleged no prejudice other than asserting the delay was *per se* unreasonable and denied him access to the Supreme Court of Virginia. He has failed to substantiate these allegations and we hold that no prejudice has been shown. "Appellate courts must assume, in the absence of anything in the record to the contrary, that delay in pronouncing sentence was for a lawful purpose in the orderly process of handling the case." *Lott v. United States*, 309 F.2d 115, 122 (5th Cir. 1962), *cert. denied*, 371 U.S. 950 (1963); *see also United States v. Reese*, 568 F.2d 1246, 1253 (6th Cir. 1977).

We find that Walker was not prejudiced by the delay. We further find that even if prejudice were found, Walker by his own conduct contributed to the delay in sentencing. For these reasons we reject his constitutional challenge based upon the delay in sentencing.

## II. Exculpatory Evidence

The defendant requested exculpatory evidence and other discoverable material prior to trial. He alleges that the Commonwealth failed or refused to provide the requested material even when ordered to do so by the court. The specific materials which Walker alleges the Commonwealth had an obligation to provide were Charles Hunnell's felony conviction record, Hunnell's plea agreement with Rockbridge County and the City of Salem, and the statement made by Hunnell to Captain Spence at the time of his arrest in which he denied involvement in the Whitten break-in. He also complains that the Commonwealth's Attorney in this case made no attempt to correct Hunnell's false testimony about the number of his prior felony convictions.

At the August 1985 hearing the court found that defense counsel's cross-examination of Hunnell elicited all of the points which Walker asserted he was unable to develop due to the Commonwealth's failure to disclose. Relying on *United States v. Bagley*, 473 U.S. 667 (1985), the court held there was no reasonable

probability that the evidence alleged to have been withheld would have changed the result of the trial and the defendant had not been prejudiced by the Commonwealth's failure to disclose.

In *Bagley*, the defendant requested prior to trial that the prosecution provide him with "[t]he prior criminal records of witnesses, and any deals, promises or inducements made to witnesses in exchange for their testimony." *Id.* at 669-70. The government's response did not disclose any "deals" but in fact two witnesses were promised $300 for aid in providing information about and testifying against the defendant at trial. The Ninth Circuit Court of Appeals held that the failure of the government to disclose impeachment evidence required automatic reversal of the defendant's conviction. The Supreme Court rejected that holding, noting that: "A new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . . .' " 473 U.S. at 677 (quoting *Giglio v. United States*, 405 U.S. 150, 154 (1972)).

On appeal, the Commonwealth argues that Walker cannot meet his burden of proving the Commonwealth's failure to disclose deprived him of a fair trial. The Commonwealth contends the fact that Walker's sentence was neither excessive nor unusual, indeed was well under the maximum allowed, proves that he was not prejudiced. The jury, however, fixed Walker's sentence at the same length that Hunnell testified he had to serve on one charge or another. This fact raises the question whether Walker's sentence might have been different if the Commonwealth had provided the items specifically requested. The jury instruction concerning punishment of principals in the second degree adds to our uncertainty of the effect, if any, of the Commonwealth's failure to comply.[6]

While defense counsel was able to attack Hunnell's credibility by showing he was a convicted felon, Hunnell admitted only three prior felony convictions instead of eleven. Although counsel elicited the approximate number of charges pending against Hunnell in various other localities, Hunnell initially testified that he had not been promised consideration for his testimony against Walker. Yet the plea agreement between Hunnell and the Common-

---

[6] The jury was instructed that a principal in the second degree was liable for the same punishment as the person who actually committed the crime.

wealth's Attorney for Rockbridge County, obtained by Walker's counsel the night before trial, indicated that Hunnell's agreement to testify against Walker was in exchange for a twenty year suspended sentence.[7] Hunnell testified he had a six year sentence to serve which was not suspended. It is unclear which jurisdiction imposed this sentence or whether this testimony was accurate.

We believe that the lack of disclosure of the plea agreements known to exist by the prosecution and the prior inconsistent statements made by Hunnell had an effect on Walker's defense; the information should have been disclosed since it was specifically requested and undeniably material to the case. "In our adversary system of criminal justice, all relevant facts must be available to both the prosecution and the defense in order to preserve the system's integrity." *Cox v. Commonwealth*, 227 Va. 324, 328, 315 S.E.2d 228, 230 (1984).

When all of the circumstances of this case are considered, however, we find that there is a reasonable probability that the failure of the Commonwealth to comply, not only with defendant's requests for discovery but also with an order of the court to provide the materials, interfered with the defendant's right to a fair trial. While we find some merit in the Commonwealth's argument that defense counsel did a good job of attacking Hunnell's credibility and any information which the Commonwealth might have supplied would have been merely cumulative, the fact remains that defendant specifically requested disclosure of exculpatory materials in the Commonwealth's possession and was entitled to the information. We believe that there is a reasonable probability that the outcome might have been different if the defendant had been provided with the materials requested.

The suppression or withholding by the prosecution of evidence favorable to the accused upon request violates due process when the evidence is material either to guilt or to punishment, irrespective of the good faith of the prosecution. *Lowe v. Commonwealth*, 218 Va. 670, 679, 239 S.E.2d 112, 118, *cert. denied*, 435 U.S. 930 (1977); *see Brady v. Maryland*, 373 U.S. 83, 87

---

[7] Inasmuch as the record does not disclose that the Commonwealth's Attorney for Rockbridge County knew of the existence of a plea agreement concerning charges pending against Hunnell in the City of Salem, we decline to hold that he was responsible for providing Walker a copy thereof.

(1963). While an automatic reversal is not required whenever "a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict . . .," *United States v. Keogh*, 391 F.2d 138, 148 (2d Cir. 1968), we believe that it is called for in this case. Additionally, the knowing use of false testimony to obtain a conviction violates due process regardless of whether the prosecutor solicited the false testimony or merely allowed it to go uncorrected when it appeared. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). When the "reliability of a given witness may well be determinative of guilt or innocence," *id.*, nondisclosure of evidence affecting that witness should neither be concealed by the prosecution, nor allowed to be falsely testified to in court. Yet the Commonwealth, having refused to disclose Hunnell's criminal record, also failed to correct Hunnell's misleading trial testimony concerning his criminal history. The false testimony concerning his felony record may have effectively misled not only Walker's counsel but also the jury.

By this ruling we do not retreat from the well established rule that there is no general constitutional right to discovery in a criminal case in this Commonwealth. *Stotler v. Commonwealth*, 2 Va. App. 481, 483, 346 S.E.2d 39, 40 (1986); *see also Watkins v. Commonwealth*, 229 Va. 469, 479, 331 S.E.2d 422, 430 (1985), *cert. denied*, 106 S. Ct. 1503 (1986). However, we agree as we must with the statement made in *United States v. Agurs*, 427 U.S. 97 (1976):

> Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable.

*Id.* at 106.

For the reasons stated herein, the convictions are reversed, and the case is remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Koontz, C.J., and Moon, J., concurred