**Alexandria**

JOHN WESLEY JEFFRIES

v.

COMMONWEALTH OF VIRGINIA

No. 0533-86

Decided March 1, 1988

COUNSEL

Louis Koutoulakos (Varoutsos and Koutoulakos; Albert J. Ahern, Jr.; and Gustave Fritschie, on brief), for appellant

David A. Rosenberg, Assistant Attorney General (Mary Sue Terry, Attorney General; Margaret Poles Spencer, Assistant Attorney General, on brief), for appellee.

OPINION

DUFF, J. — On November 4, 1985, a jury convicted John Wesley Jeffries of rape, two counts of sodomy, abduction and inanimate sexual penetration. He was sentenced in accordance with the jury's recommendations. His appeal raises for our consideration these issues: (1) whether the Commonwealth failed to disclose exculpatory evidence; (2) whether the Commonwealth should have disclosed evidence about (a) Jeffries' admissions to a fellow jail inmate, and (b) the inmate's prior criminal convictions; and (3) whether the cumulative effect of the alleged errors denied Jeffries due process and a fair trial.

Finding no reversible error, we affirm the judgment of the trial court.

Viewed in the light most favorable to the Commonwealth, the evidence showed the following: The victim, Beverly, was married to Jeffries at the time of the crimes and was divorced in July of 1985; however, they had been separated since July, 1979. Beverly, thereafter, made her home with her parents in Middleburg, Virginia. On April 6, 1985, around noon, she left her home for the fifteen-minute walk to a neighborhood grocery store. As she was

walking down the street Jeffries drove past her in a green Chevrolet. He pulled into a street she was about to cross, stopped the car and asked her to get in, stating that he wanted to talk to her. She refused and attempted to run across the street toward a house because she was terrified of him and wanted to get help. Jeffries then got out of the car, grabbed Beverly, forced her into the car, and told her to lie down on the front seat.

The record shows that he then drove a short distance up the street and stopped in front of some trees. At this point, Jeffries raped Beverly and forced her to commit oral sodomy. Thereafter, he drove out of town to a deserted area where he stopped the car, forced Beverly to submit to anal sex, assaulted her with a soda bottle and then raped her once again. Immediately thereafter, Michael Grimes, a friend of Jeffries appeared at the scene and with Jeffries' assistance, he also raped Beverly.

Jeffries then took Beverly back to Middleburg and let her out of the car with the warning that he would kill her if she told anyone what happened. However, Beverly promptly reported the crimes to Officer Regina Henry. At the time she made the report, she was sobbing hysterically, her clothes were in disarray, and she had blood dripping down the right side of her neck. She was taken to the hospital emergency room where she was examined by a physician.

Jeffries was subsequently arrested and charged with the various offenses. After the indictments were returned, he filed a discovery motion. Although no court order relating to discovery appears in the record, the Commonwealth provided the defense a typed summary with the handwritten notes of Jeffries' April 15, 1985 interview with the police, as well as copies of two relevant laboratory reports. These reports revealed that a stain in the victim's panties and blue jeans was analyzed as blood secretion type A, PGM 2-1, PepA 1. The reports also showed that the victim and the defendant were both type O secretors, with blood type PGM 1, PepA 1. The reports also stated, in laboratory terms, that a "mix" of the secretion from a type A secretor with the secretion type of the victim or the defendant would give a combination secretion type

identical to the secretion in the panties.[1] On October 29, 1985, the day prior to trial, the Commonwealth advised the defendant that Michael Grimes had blood type O.

Prior to trial, the Commonwealth moved the court for an evidentiary hearing pursuant to Code § 18.2-67.7[2] for the purpose of explaining the presence of semen on the victim's panties of a secretion type different from that of the victim or the defendant. The defense replied that it had been provided the laboratory reports pursuant to the pre-trial discovery and that it was aware of the test results. The record discloses discussions between the court and defense counsel regarding the purpose of the Commonwealth's motion; following these discussions, the court deferred ruling on the motion. The hearing requested by the Commonwealth was never held, but during the trial Beverly testified that on the evening of April 5, 1985, (the evening prior to the crime) she had engaged in consensual sexual intercourse with another male whom we will identify as Gordon. She further testified that she wore the same blue jeans on the day before and the day of the attack. Gordon was called as a prosecution witness and confirmed that he had engaged in consensual sex with Beverly on the evening of April 5, 1985. He also testified that his blood was type A.

---

[1] "Type O, PGM 1, PepA 1 secretions mixed with secretions from a type A secretor, PGM 2-1, PepA 1 or a type A secretor, PGM2, PepA 1 will give a combination secretion type of A, PGM 2-1, PepA 1."

[2] Code § 18.2-67.7 provides in pertinent part:

A. In prosecutions under this article, general reputation or opinion evidence of the complaining witness's unchaste character or prior sexual conduct shall not be admitted. Unless the complaining witness voluntarily agrees otherwise, evidence of specific instances of his or her prior sexual conduct shall be admitted only if it is relevant and is:

1. Evidence offered to provide an alternative explanation for physical evidence of the offense charged which is introduced by the prosecution, limited to evidence designed to explain the presence of semen, pregnancy, disease, or physical injury to the complaining witness's intimate parts;

* * *

C. Evidence described in subsections A and B of this section shall not be admitted and may not be referred to at any preliminary hearing or trial until the court first determines the admissibility of that evidence at an evidentiary hearing to be held before the evidence is introduced at such preliminary hearing at trial.

## I.

Jeffries first contends that he was denied a fair trial by the Commonwealth's failure to provide the information regarding the victim's and Gordon's sexual activity. He argues that such information was exculpatory and would have enabled him to investigate the relationship and to better prepare for cross-examination of Gordon. The Commonwealth denies that it was required to provide the information and asserts that it was not exculpatory of Jeffries' participation in the crimes. The Commonwealth argues that the relationship between Beverly and Gordon merely explained the presence of type A semen on the clothes and, therefore, was indirectly inculpatory. The Commonwealth also argues that it attempted to provide the explanation by moving for the evidentiary hearing, but ruling on the motion for a hearing was deferred by the court with the implicit concurrence of the defendant.

We recently examined the consequences of the Commonwealth's failure to furnish exculpatory evidence in *Walker v. Commonwealth*, 4 Va. App. 286, 356 S.E.2d 853 (1987). In *Walker* the defendant specifically requested, and the court ordered the production of a co-defendant's conviction record, certain plea agreements, and other statements made by the co-defendant. In reversing the conviction, we held that there was a significant likelihood that the Commonwealth's failure to disclose interfered with the defendant's right to a fair trial. We also noted that an automatic reversal is not required whenever "a combing of the prosecutor's files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict. . . ." 4 Va. App. at 301, 356 S.E. 2d at 861 (quoting *United States v. Keogh*, 391 F.2d 138, 148 (2d Cir. 1986)).

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or punishment." In the recent decision of *United States v. Bagley*, 473 U.S. 667 (1985), the Court dealt with the standard of materiality to be applied in determining whether a conviction should be reversed because the prosecutor failed to disclose information that might have been helpful in conducting the cross-examination. The lower

court held that the failure to provide the information required an automatic reversal. In reversing, and referring to *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court stated:

> We find the *Strickland* formulation of the *Agurs* test for materiality sufficiently flexible to cover the "no request," "general request," and "specific request" cases of prosecutorial failure to disclose evidence favorable to the accused: The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

*Id.* at 682.

Assuming, without deciding, that Jeffries' discovery motion falls within the "general request" concept of *Bagley*, and assuming further, without deciding, that such evidence was exculpatory, the question still remains whether the identity of Gordon, as the supplier of the type A semen, was material in the constitutional sense so as to require its production by the Commonwealth. Without question it would have enabled the defense to interview Gordon before trial and possibly strenghten the defense's cross-examination of Gordon. However, we find nothing in the record which furnishes a basis for concluding that there is a reasonable probability that, had Gordon's identity been revealed prior to trial, the result of the proceedings would have been different. We hold that the failure to furnish Gordon's identity did not interfere with Jeffries' right to a fair trial.

## II.

The defendant next contends that he was denied a fair trial because the Commonwealth failed to disclose the substance of a statement he allegedly gave to a fellow jail inmate, Francis Longerbeam. He argues that disclosure was required under Rule 3A:11 and the recent case of *Lomax v. Commonwealth*, 228 Va. 168, 319 S.E.2d 763 (1984). We disagree.

Longerbeam was called as a prosecution witness and testified, without objection, that he had twice shared a cell with the defendant. He said that the defendant had related that he and his buddy were riding around drinking beer, had run across his wife, picked her up and had sex with her. Apart from the defendant's failure to

object to this testimony or to bring to the trial judge's attention his claim that the Commonwealth failed to provide proper discovery (*see* Rule 5A:18), his admission to Longerbeam was contrary to his defense or theory of the case, i.e., that he was not present at the time of the offense. Thus it was not exculpatory.[3]

■ We hold that Rule 3A:11 did not require disclosure of the defendant's statements to Longerbeam. This Rule provides, *inter alia*, that upon "written motion of an accused" the court shall order disclosure of oral statements by the accused "to any law enforcement officer." Here, Jeffries' written motion included only a request for exculpatory statements. His statement to Longerbeam that he and a buddy had sex with his wife was not exculpatory and was not a statement made to a law enforcement officer.[4]

Jeffries' reliance on *Lomax* is misplaced due to the factual differences involved. In *Lomax* the Commonwealth, pursuant to court-ordered discovery, had furnished a toxicology report to the defense on the morning of trial. It had not been included in other materials furnished two days prior to trial. After receipt of the report, the defendant moved for a continuance, claiming that he needed more time to consult with experts who could determine the effect of the quantity of Preludin shown by the report to have been in the victim's blood. The court denied the continuance, and the sole issue on appeal was whether the denial of the continuance motion amounted to an abuse of discretion. In a four to three decision the court found that it did, and reversed the conviction.

Here, there was no court-ordered discovery. The evidence sought was not exculpatory under defendant's theory of the case, and there was no request for a continuance after Longerbeam's testimony. We find that *Lomax* is not controlling.

---

[3] On cross-examination the defense explored whether favorable treatment was given to the witness by the Commonwealth in exchange for his testimony. Longerbeam admitted that he was told that "they would put a recommendation to the Judge" for time served on a failure to appear charge but denied that his testimony was in exchange for such recommendation.

[4] Nor do we find the Fourth Circuit's opinion in *Henry v. United States*, 590 F.2d, 544 (1978), *aff'd*, 447 U.S. 264 (1980) applicable to these facts. In *Henry*, the inmate witness was a paid informant, a "Government agent expressly commissioned to secure evidence" from the defendant. Here, there was no contact between the Commonwealth and Longerbeam, relevant to Jeffries, prior to Jeffries' statement to Longerbeam.

Jeffries also argues that he was denied a fair trial by the Commonwealth's failure to furnish him the criminal record of Longerbeam prior to trial. He also asserts that Longerbeam lied on the stand when he responded to questioning that he had only one prior conviction of a felony or a misdemeanor involving moral turpitude. The record contains no evidence that Longerbeam testified falsely. The point was raised in a motion to set aside the verdict of the jury and award a new trial. There apparently was a conflict between the Commonwealth's and the defendant's understanding of what the record showed. In a letter opinion denying the motion, the trial judge noted "the attorney for the Commonwealth stated that his record showed but one such felony as of the date of his testimony."

In *Correll v. Commonwealth*, 232 Va. 454, 352 S.E.2d 352 (1987), the Supreme Court held that an undisclosed criminal conviction is "evidence favorable to the accused" within the *Brady* rule because the defense may use it for impeachment purposes. The nondisclosure of such evidence requires reversal, however, only if it is material within the meaning of that term as defined in *Bagley*. The *Correll* opinion stated:

> Evidence is material in this sense "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."

*Id.* at 465, 352 S.E.2d at 358 (quoting *Bagley*, 473 U.S. at 682).

In the present case, the record does not contain Longerbeam's criminal record. Therefore, we are unable to resolve whether Longerbeam did accurately disclose his record. We further find no support for concluding that, had Longerbeam's record been disclosed, there is a reasonable probability that the result of the proceedings would have been different.

### III.

Of final concern is Jeffries' assertion that the cumulative effect of the alleged errors denied him due process and a fair trial. The only new error alleged in this aspect of the appeal is the trial court's refusal to permit cross-examination about alleged false rape complaints by the victim. The record does not support this

allegation. The defense did ask the victim how many prior occasions she had accused persons of raping her. Upon objection, the court held a bench conference which was not recorded in the transcript. Thereafter, the defense proceeded with other areas of cross-examination. We cannot tell whether the court sustained the objection or whether the defense withdrew the question as a result of the bench conference. Furthermore, there was no proffer of evidence of any prior rape complaints. Even if we assume that the court sustained the objection to the question and that such ruling was error, we cannot consider the error on appeal without a proffer of what such evidence would have been. *Jones v. Commonwealth*, 217 Va. 226, 229, 228 S.E.2d 124, 126 (1976).

Thus, we conlude that each of the alleged individual errors is without merit and that the allegation of cumulative error also is without merit.

Finding no reversible error, the convictions are

*Affirmed.*

Barrow, J., and Benton, J., concurred.