## Salem

## WARREN EDWARD LEMONS, JR.

### v.

## COMMONWEALTH OF VIRGINIA

No. 0327-90-3

Decided February 25, 1992*

---

* Petition for rehearing granted April 8, 1992.

COUNSEL

John Gregory, Jr., for appellant.

John H. McLees, Jr., Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

MOON, J.—Warren Edward Lemons, Jr., was convicted of second degree murder, malicious wounding, and the use of a firearm in the commission of both felonies. On appeal, Lemons claims the trial court erred in its discovery rulings by (1) allowing the Commonwealth to provide only a summary of the exculpatory portion of Randall Murray's statement; (2) not reviewing *in camera* the statements of Brian Gunn, Abdul Smith and William Dungee; and (3) not making the statements of Murray, Gunn, Smith and Dungee a part of the record for review by this Court. Because the record does not establish a reasonable probability that, had the alleged exculpatory evidence been disclosed to the defense, the result of the proceeding would have been different, we affirm.

At a pre-trial hearing, Lemons moved for the production of exculpatory evidence. The Commonwealth's attorney informed the court that she was unaware of the existence of any exculpatory evidence possessed by the Commonwealth. Defense counsel then moved the court to place under seal those statements taken from

witnesses which might be exculpatory. The court granted the motion.

Another hearing was held upon the Commonwealth's motion for reconsideration of the court's order requiring witness statements to be filed under seal. At that hearing, the Commonwealth's attorney admitted that since the prior hearing, she had discovered that Randall Murray had stated that someone other than Lemons had done the shooting. The Commonwealth's attorney provided Lemons with a summary of the exculpatory portions of Murray's statement. Defense counsel argued that Randall Murray's entire statement and the entire statements of the other witnesses should be disclosed or at least filed with the court under seal. The court, changing its earlier ruling requiring the witness statements in question to be placed under seal, took defendant's motion under advisement.

At trial, the Commonwealth placed into evidence a taped statement given by Lemons in which Lemons admitted both shootings. Detective Clingenpeel then testified that Lemons told him at the jail the day after the statement was made that he was "covering for Whiz," Abdul Smith, who he said did the shooting.

Murray was called as a defense witness and testified that he saw an altercation between two teenage black males and four teenage white males. He said that one of the black males said something and pointed in the direction of the white males. Then he heard a shot. He did not see the shooting and had no idea who did the shooting. On cross-examination, the Commonwealth sought to impeach Murray by reading from his prior statement (the exculpatory statement) to the police. In the portion of Murray's statement read into the record, he admitted he told the police that he had seen Brian "Chipper" Gunn pull the trigger three times, and that "either 'Muncher' Dungee or a third person that was standing out at the car grabbed the gun [and] shot a guy." Murray acknowledged making this statement but said that he was confused, dazed, and very upset when he made it. John Brown, Jr., testified that Chipper Gunn had been in the nightclub earlier that evening threatening to kill the bouncer, and had shown Brown a gun inside his jacket. At the time of trial, Gunn was dead.

In a post-trial motion, Lemons again moved that the undisclosed statements of Randall Murray, Abdul Smith, "Muncher" Dungee, and Brian "Chipper" Gunn, be made a part of the record. Lemons argued that these statements might have indicated that Lemons did not fire the shots, or that when he fired the shots he was upset or attempting to defend himself. The court ruled, however, that the statements would not be made a part of the record, but directed the Commonwealth's attorney to retain all transcripts and recordings of witness statements so that this Court could review them if it so desired.[1]

In order to prevent a miscarriage of justice, the prosecution is required to reveal to the defense any exculpatory evidence in its possession. *Brady v. Maryland*, 373 U.S. 83, 87-88 (1963). Unless defense counsel learns of other exculpatory evidence that was withheld and brings it to the court's attention, the prosecutor's determination on disclosure is final. *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987). If in doubt, a prosecutor may submit information to the trial court for an *in camera* review to rule on whether it must be disclosed. *Cherricks v. Commonwealth*, 11 Va. App. 96, 102, 396 S.E.2d 397, 400 (1990). However, only if a substantial showing is made that a specific item of exculpatory evidence exists and has been withheld does a defendant have a right to judicial review of the prosecutor's actions. *See, e.g., United States v. Vastola*, 685 F. Supp. 917, 919-20 (D.N.J. 1988).

Here, the exculpatory aspect of Murray's statement was disclosed to Lemons' counsel two months prior to trial. In this case, all witnesses, except for the deceased Gunn, were equally available to Lemons as they were to the Commonwealth. Lemons' counsel was free to interview them and call them to testify. In fact, the trial court indicated a willingness to reconsider its previous ruling by directing a disclosure of the witnesses' verbatim statements if the witnesses refused to be interviewed by the defense. Lemons never indicated he had such a difficulty.

Lemons claims that, had the disclosure been made earlier, he would have interviewed Gunn and the other witnesses before Gunn died in the hopes of developing evidence that Lemons had

---

[1] This Court did not seek to review the evidence because it was not viewed by the trial judge.

not committed the shooting. However, a claim that the prosecution has caused the defense to lose an opportunity to investigate and uncover potentially exculpatory evidence must be supported by a showing of bad faith. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *Tickel v. Commonwealth*, 11 Va. App. 558, 563, 400 S.E.2d 534, 537 (1991). The trial judge determined that the prosecutor had acted in good faith and the record does not show as a matter of law that the trial court was plainly wrong.

The undisclosed statements of the other witnesses would not have been admissible as substantive evidence, but would have been admissible for impeachment purposes. *Commercial Distributors, Inc. v. Blankenship*, 240 Va. 382, 394, 397 S.E.2d 840, 847 (1990). Because the witnesses' statements would not have been admissible as substantive evidence and because Lemons was able to call the witnesses themselves if he wished, there is no reasonable probability that disclosure would have resulted in a different outcome. *See Robinson v. Commonwealth*, 231 Va. 142, 152, 341 S.E.2d 159, 165 (1986).

■ The defense contends that the prosecution withheld from Lemons additional evidence that trial counsel believed "might indicate" that the victims had been intoxicated at the time of the shooting and that the shooting had been provoked by Watson's arguing with the defendant. Such evidence would have been merely cumulative of the evidence introduced at trial. Nondisclosure of cumulative evidence does not violate due process of law. *Sennett v. Sheriff of Fairfax County*, 608 F.2d 537, 538 (4th Cir. 1979).

Every indication from the record suggests that after Murray was identified as having provided exculpatory evidence, the defendant obtained his cooperation, determined what evidence he had that was exculpatory, and was able to call him as a defense witness. Nothing in the record suggests that there was exculpatory material concerning Murray, other than the information contained in the summary given to the defense by the Commonwealth's attorney or the verbatim statement read to Murray on cross-examination.

Lemons does not claim that Smith and Dungee made exculpatory statements which the Commonwealth failed to furnish. Murray identified Smith and Dungee in his verbatim statement as

persons who were present and who, Lemons presumes, observed the same thing Murray did. The Commonwealth's attorney provided Lemons the names and addresses of these witnesses and a summary of their statements. And since Lemons requested that the court review their verbatim statements *in camera*, it is apparent that Lemons knew of the existence of those witnesses and had the opportunity to interview them. By exercising their discretion in conducting a review *in camera* when it appears that the Commonwealth's attorney may have failed to fully disclose the exculpatory evidence, trial courts can ensure that a prosecutor does not disregard or misinterpret the exculpatory nature of a statement as it might be viewed from the perspective of the defense. Such a procedure may, in some cases, avoid unnecessary appeals and, perhaps, reversals and retrials, and will foster the administration of justice.

However, we fail to see that Murray's verbatim statement would have affected the use of Smith and Dungee as witnesses. Lemons benefitted from Murray's statement, presented on cross-examination, that Chipper Gunn and either Muncher Dungee or a third person fired the shots. Beyond that, Lemons had their names and addresses if he determined that he should call them.

In summary, assuming without deciding that a discovery violation occurred when the Commonwealth did not provide verbatim exculpatory portions of a witness' statement,[2] the violation is not reversible error because Lemons has not shown that, had the verbatim statement been provided, a reasonable probability exists that a different result as to the punishment or guilt of the defendant would have occurred. *See Brady*, 373 U.S. at 88.

Lemons requests that we rule, as a matter of law, that as a way to assure that the Commonwealth's attorney complies with its discovery obligation, that trial courts exercise their discretionary authority to review these statements *in camera*. We do not interpret any rule or statute as authorizing or requiring this review. If this procedure by the trial court is necessary, it is a matter for legislation or a change of the rules of court. Since there was no discovery at common law, we should not extend legislation or rules beyond

[2] Conceivably a verbatim statement may include sensitive information pertaining to some subject other than the exculpatory material. Unless good cause exists, the trial courts should require the production of the verbatim statement when possible.

their plain meaning.

*Affirmed.*

Coleman, J., concurred.

Duff, J., concurring in part and dissenting in part.

I concur with the majority's position regarding the statements given by Gunn, Smith and Dungee. No specific evidence in this record establishes that those statements contained exculpatory material. However, these individuals were present at the shooting and a plausible argument can be advanced that if Murray saw shooters other than the defendant, then Gunn, Smith, and Dungee also may well have witnessed the event. Under the present state of the law, such a possibility does not "constitute a substantial basis" for claiming materiality exists and, accordingly, no reversible error exists based upon the trial court's ruling regarding these three statements. *See Walker v. Commonwealth*, 4 Va. App. 286, 301, 356 S.E.2d 853, 861 (1987).

However, I depart from the majority regarding the statement of Randall Murray. In my view, it occupies an entirely different position. The Commonwealth's attorney admitted in open court that Murray's statement contained exculpatory material. The Commonwealth provided the defense with its own summary or digest of what it considered to be the exculpatory portion of the statement. Thus, the Commonwealth determined what portions of the statement were exculpatory and further determined how to summarize those portions for the defense. In my opinion, this procedure does not satisfy the Commonwealth's obligation under the discovery order to produce all exculpatory evidence. This discovery order required the Commonwealth to "turn over, or otherwise make available to the accused, any and all evidence or information within the possession . . . of the Commonwealth which tends to exculpate the accused. . . ."

The obligation to produce "any and all" evidence is not satisfied by disclosing only a summary or digest of the exculpatory evidence. Permitting the prosecutor to provide his or her own summary of admittedly exculpatory evidence "casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice." *Brady v. Maryland*, 373 U.S. 83, 88 (1963). Under *Brady*, the defendant has a right to have all exculpatory

*evidence* disclosed which is material to guilt or to punishment. The Commonwealth Attorney's characterization of the exculpatory evidence is *not* the exculpatory evidence. Allowing prosecutors to substitute summaries of exculpatory statements instead of providing the verbatim language raises questions of doubt about the accuracy of the evidence and undermines the defendant's due process protection under *Brady*. I would hold that both *Brady* and our Rules of Court require disclosure of the verbatim language of the exculpatory statement.

The majority further holds that Lemons has failed to show that, had the verbatim statement been provided, it would have produced a different result as to the punishment or guilt of the defendant. We are not able to determine the materiality of Murray's actual statement because it was not included in the record, as it should have been. However, it is difficult to imagine a statement that would be more material as to guilt than one in which the declarant names parties other than the defendant as the perpetrators of the crime. If the trier of fact believed the statement, an acquittal should result. A digest or summary of the actual statement impedes our ability to make that determination. Furthermore, an element of unfairness creeps into a proceeding when the Commonwealth refuses to furnish the actual exculpatory material and then resists reversal by arguing that the defendant has not shown that such evidence was material. How could a defendant ever make such a showing when he does not know the actual evidence? In this case, Lemons knew only that the Commonwealth had admitted that it possessed exculpatory evidence and had furnished a digest thereof. He did not know, nor could he know, whether the digest was accurate or complete. Under these circumstances, where the digest of the statement is clearly material, I would hold that the requirement of materiality has been satisfied. To hold otherwise places an impossible burden upon a defendant.

I would also hold that error was committed when the trial judge failed to inspect the statement *in camera*. The majority asserts that they do not interpret any rule or statute as authorizing such a review. I believe that the inherent right of trial judges to inspect questionable documents *in camera* has been long accepted as part of Virginia trial practice. Such clearly is implicit in the language of *Walker v. Commonwealth*, 4 Va. App. 286, 301, 356 S.E.2d 853, 861 (1987). In *LeMond v. McElroy*, 239 Va. 515, 391

S.E.2d 309 (1990), our Supreme Court recognized that, as a matter of routine practice, "confidential records are filed for *in camera* inspection by a trial court and, if necessary, by an appellate court." *Id.* at 520, 391 S.E.2d at 312. In our recent case of *Cherricks v. Commonwealth*, 11 Va. App. 96, 396 S.E.2d 397 (1990), we said, "When the exculpatory nature of material is in doubt, the Commonwealth could submit the material to the trial court for an *in camera* review and ruling on its possible exculpatory value." *Id.* at 102, 396 S.E.2d at 400. *See also White v. Commonwealth*, 12 Va. App. 99, 402 S.E.2d 692, *aff'd*, 13 Va. App. 284, 410 S.E.2d 412 (1991) (en banc).

I do not propose that *in camera* inspection is required whenever a defendant claims the mere possibility that exculpatory material is contained in evidence within the control of the Commonwealth. It is discretionary with the trial court but, as with all discretionary rulings, the court's discretion is reviewable for abuse. Where, as here, there is no issue that the requested evidence *was* exculpatory, the court should have inspected it *in camera* to determine whether it was material. Further, the court should have made the statement a part of the record for our review. By not so doing, I would hold that the court abused its discretion.

In summary, I would hold that where the Commonwealth admits, as it did in this case, that it possesses an exculpatory statement in the form of a witness' statement, it is required to provide the statement, verbatim, to a defendant and not a summarization. Further, under the facts of this case, where the evidence is admittedly exculpatory, I would hold it error for the trial court to refuse examination *in camera* to determine its materiality or, at least, to include the statement in the record so that we can make that determination. For these reasons, I would reverse and remand for a new trial.