## CIRCUIT COURT OF LOUDOUN COUNTY

Commonwealth of Virginia

v.

Curtis E. White

### Case No. (Criminal) 8129

By Judge James H. Chamblin

October 29, 1992

Because of the limited right of discovery available to a criminal defendant, we must of necessity rely on the Commonwealth's Attorney not only to be fully aware of all information deemed to be known by the Commonwealth, but also to be able to determine if any such evidence is exculpatory. Further, because of the limited right of discovery available to the Commonwealth, the Commonwealth's Attorney may not be fully aware until trial of the defendant's strategy. It might not be, therefore, until trial that the Commonwealth realizes that some evidence it has is exculpatory. There is no way to prevent this undercurrent in Virginia criminal law and procedure. An *in camera* review of evidence in possession of the Commonwealth may not be the best safeguard because in most cases, the trial judge is unaware of either party's evidence and/or strategy.

I certainly realize that a capital case is a very serious case because the defendant's life hangs in the balance. Even so, I must treat this case the same as any other criminal case. If I do not, then the precedent could open the floodgates to similar arguments in other, non-capital cases.

At the same time, the Commonwealth's Attorney must have the same realization. Because of the nature of the case, if any question arises about non-produced exculpatory evidence in this trial, then the

doubt will go to the defendant. In other words, if it is close, then it will be deemed exculpatory. I am sure the Commonwealth understands what can happen if exculpatory evidence is not produced. It is something that this judge would prefer not to have to deal with in this case.

In this case, the Court has given Mr. Burch an option to produce statements or confessions of Mr. Beale to the Court for *in camera* inspection. If he does so, then about all that I can do is to examine the statements in light of the facts and circumstances that have come to my attention during any proceeding herein or are found in the court file. My primary focus in reviewing such statements will be on inconsistent statements and statements obviously exculpatory.

The purpose of this letter is to make it clear to counsel that submitting items for *in camera* review places a very heavy burden on the Court during all proceedings in this case. Because of the burden I must advise counsel that if I have any feelings whatsoever that something may be exculpatory, then it will be disclosed to defense counsel.

As an offer to help ease my burden, either party is granted the authority to submit to this Court *ex parte* any statement of expected evidence or trial strategy if either the Commonwealth or the Defendant deem it advisable.

### November 18, 1993

On November 2, 1993, the Court heard the argument of counsel on the second paragraph of the Defendant's Motion to Set Aside Jury Verdicts wherein he requests the Court to set aside the jury verdicts "because the Court denied the defense access to the interview transcript of Jerry Buracker, or in the alternative, that the Court refused to review Buracker's interview transcript *in camera*."

For the reasons hereinafter set forth, the Motion to Set Aside Jury Verdicts is granted on this ground. The jury verdicts are set aside, and the Defendant is granted a new trial if the Commonwealth be so advised.

In May, 1993, the jury heard evidence in this case for approximately one and one-half days and deliberated almost seventeen hours over three days before finding the Defendant guilty of first degree murder and robbery. The jury fixed his sentences at thirty years and a fine of $15,000.00 on the murder charge and fifteen years on the robbery charge. Although the Commonwealth presented the testimony of fifteen witnesses, it cannot be disputed that the testimony of Jerry Bu-

racker was absolutely essential to the Commonwealth's case and the defendant's convictions. The Commonwealth offered no eyewitness testimony. There was no scientific or physical evidence that linked White to the crimes.

Buracker, a convicted felon, testified to admissions made to him by White when they were incarcerated together at the Fauquier County A.D.C. from July to December, 1992. Buracker testified that White admitted to him that he had gone to his grandfather's apartment to steal money from him to buy crack cocaine, that Larry Beale went with White to act as a lookout, that White got into a tussle with his grandfather during which White stabbed him, and that White took his grandfather's wallet. White admitted to Buracker that he stabbed his grandfather several times because he "knew who he was." This statement implies that White killed his grandfather to prevent him from identifying him as the assailant. On July 27, 1992, the defendant filed his first motion for exculpatory evidence in possession of the Commonwealth. It was not until December 23, 1992, that Sargent John Smith of the Leesburg Police Department interviewed Buracker. Defense counsel's memorandum (Defendant's Exhibit 1, November 2, 1993, hearing) shows that they knew that Smith had taped his interview with Buracker. They were aware of Smith's interview from looking at his file. On May 17, 1993, the defendant filed a motion specifically requesting the Court to order the Commonwealth to provide the defendant with a copy of the transcript of Smith's interview of Buracker or to produce it to the Court for *in camera* review for exculpatory evidence.

This motion was argued on May 20, 1993, just prior to the commencement of the trial. The Commonwealth did not produce the transcript claiming that it contained nothing exculpatory. The Commonwealth's Attorney and defense counsel had previously been advised by the Court by letter dated October 29, 1992, of the difficult position in which such motions place the trial judge. This letter is part of the record in this case. The Court had to rely on the Commonwealth's Attorney to determine if the transcript contained anything exculpatory. The defendant offered nothing to show that the statement contained anything exculpatory. Hence, the motion was denied.

After earlier arguments on another ground of the Defendant's Motion to Set Aside Jury Verdicts, the Court ordered the Commonwealth to produce the interview transcript for *in camera* inspection. See order

entered August 2, 1993. The transcript was received on August 4, 1993, and, for purposes of the record, is now made Court's Exhibit 1, November 2, 1993, Hearing. After the *in camera* review, the Court ordered that a copy thereof be provided to defense counsel. See the order entered August 12, 1993.

The transcript could have been used by defense counsel in only one of two ways, impeachment of Buracker or as a source of information that could have led to evidence favorable to the accused. Defense counsel presented no argument that they could have used information in the transcript to develop other evidence favorable to White. Therefore, the transcript must be looked at in light of what defense counsel could have done with it to impeach Buracker's testimony at trial by prior inconsistent statements.

At argument, defense counsel pointed to approximately eight instances where Buracker's trial testimony was inconsistent with his statements to Smith in December, 1992. Of these, only the following five merit consideration.

1. At trial, Buracker testified that he had talked to no one else at the Fauquier County jail about White's charges or difficulties. In the interview, he told Smith that he had spoken with James Frye, Tony Hatcher, Opie O'Bannion, and "another guy" about White.

2. At trial, Buracker testified that White told him that he had stabbed his grandfather once or twice and then several other times, but he never testified that White told him of stabbing his grandfather in the chest. No evidence was presented at trial that the victim had been stabbed in the chest. However, at least three times in the December, 1992, interview, Buracker stated that White told him that he had stabbed his grandfather in the chest.

3. At trial, Buracker testified that White told him that he took his grandfather's wallet. In the interview with Smith, Buracker did not specifically state that White told him that he took the wallet.

4. At trial, Buracker testified that White told him that his girlfriend (Buracker said that White called her a "dumb bitch") put his blood-splattered clothes under the mattress. In his interview with Smith, Buracker stated White told him that "the dumb bitch got caught washing blood out of [White's] clothes."

5. At trial, Buracker said that he had had "several conversations" with White at the Fauquier jail. In the interview with Smith, Buracker said that he and White "talked almost every day" and that he had

spoken to White on the phone at the Fauquier jail twenty to twenty-five times.

In *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963), the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to either guilt or punishment. Implicit in the requirement of materiality if a concern that the suppressed evidence might have affected the outcome of the trial. *United States v. Agurs*, 427 U.S. 97 (1976).

Borrowing upon the standard imposed in cases involving incompetence of defense counsel announced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), the United States Supreme Court in *United States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375 (1985), held:

> We find the *Strickland* formulation of the *Agurs* test for materiality sufficiently flexible to cover the "no request," "general request," and "specific request" cases of prosecutorial failure to disclose evidence favorable to the accused: The evidence is material only if there is a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

The *Bagley* approach has been adopted by the Virginia Supreme Court, *Correll v. Commonwealth*, 232 Va. 454 (1987), and the Virginia Court of Appeals, *Carter v. Commonwealth*, 10 Va. App. 507 (1990).

As cited by the defendant, the Court of Appeals addressed this issue of lack of disclosure of exculpatory evidence involving prior inconsistent statements of an essential Commonwealth's witness in *Walker v. Commonwealth*, 4 Va. App. 286 (1987).

I am of the opinion that once Buracker had testified, the Commonwealth's Attorney should have realized that inconsistencies existed between his testimony and his statements to Smith in December, 1992. I find no bad faith on the part of the Commonwealth's Attorney. But the duty to disclose exculpatory evidence exists irrespective of good faith on the part of the Commonwealth's Attorney. *Walker*, 4 Va. App. at 300.

Because Buracker's credibility was so crucial to the Commonwealth's case, any prior inconsistent statements of Buracker known to the Commonwealth have to be exculpatory.

Considering all the facts and circumstances of this case, I am of the opinion that the lack of disclosure of Buracker's prior inconsistent statements to Smith affected White's defense. The statements are both exculpatory and material to the case. Finally, I believe that there is a reasonable probability that the outcome of the case might have been different if White had been provided with the statement of Buracker to Smith in December, 1992. The lack of disclosure deprived White of a fair trial. The statement had been specifically requested but not produced by the Commonwealth.