**Herman Russell McLAWHORN, III,**
Appellant,

v.

**STATE OF NORTH CAROLINA,**
Appellee.

No. 73–1231.

United States Court of Appeals,
Fourth Circuit.

Argued April 2, 1973.

Decided Sept. 10, 1973.

Jack W. Floyd, Greensboro, N. C. (Benjamin F. Davis, Jr., and Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., on brief), for appellant.

Richard N. League, Asst. Atty. Gen., of North Carolina (Robert Morgan, Atty. Gen., of North Carolina, on brief), for appellee.

Before BOREMAN, Senior Circuit Judge, and CRAVEN and BUTZNER, Circuit Judges.

BOREMAN, Senior Circuit Judge:

Herman Russell McLawhorn, III (hereafter petitioner or McLawhorn) appeals the district court's denial of his petition for a writ of habeas corpus. He complains that the State's refusal to reveal the identity of an informant who participated in illegal activities with respect to narcotic drugs of which petitioner was convicted in state court is a denial of due process. Since we conclude that this refusal to reveal the identity of a *participant* in the offenses charged constitutes a denial of fundamental fairness required by the Four-

teenth Amendment, we reverse and remand.

## I

During the summer and fall of 1971, Detective Sylvester Daughtry, an officer in the Greensboro, North Carolina, Police Department, was conducting an extensive undercover investigation of illegal drug sales in the area with the assistance of an unidentified informant. The informant told Daughtry that McLawhorn was involved in the drug traffic and offered to arrange a sale of cocaine. On August 7, 1971, after making several telephone calls to McLawhorn in an effort to arrange a "buy," the informant met Daughtry and began looking for McLawhorn on the streets. The informant saw McLawhorn driving a car and signaled him to stop. After a brief conversation the informant called to Daughtry and introduced him as a potential customer. They entered McLawhorn's car who then drove them a short distance while the informant negotiated a sale of one gram of cocaine. According to Daughtry's testimony, McLawhorn then removed one gram of cocaine from under the dashboard of his car and sold it to Daughtry and the *informant* for forty-five dollars.[1]

On December 11, 1971, approximately four months after the sale,[2] McLawhorn was arrested and later indicted. He was charged in separate counts with illegal transportation,[3] possession[4] and sale[5] of a narcotic drug.[6] He first moved to dismiss the indictments for failure to provide a speedy trial.[7] McLawhorn alleged at the hearing on the motion and again at trial that the delay in charging him resulted in his inability to secure the attendance of the informant as a witness to the defense of entrapment. The trial court denied the motion to dismiss and held that the State was entitled to invoke the privilege of nondisclosure to support its refusal to reveal the informant's identity.[8]

1. Daughtry testified at the pretrial hearing on a motion to dismiss and again at trial that he paid twenty dollars and the informant paid an additional twenty-five dollars to McLawhorn for a single bag of cocaine. McLawhorn was charged with a single sale of cocaine to Daughtry. It was contended that this constituted a fatal variance between the indictment and the evidence since the sale was made to the two jointly. This contention appears to have been abandoned on appeal to the Supreme Court of North Carolina.

2. During that four-month period Daughtry continued his undercover investigation. His desire to conceal his own identity while operating as an undercover officer was assigned as his reason for delaying the filing of charges.

3. N.C.Gen.Stat. § 90–111.2 (1965 Repl.Vol.).

4. N.C.Gen.Stat. § 90–88 (1965 Repl.Vol.).

5. *Id.*

6. Actually, two indictments were returned against the petitioner. One charged him with illegal transportation of a narcotic drug and in the other he was charged in one count with illegal possession and in the second count with sale of that drug. All of these charges arose from the incidents described. Convictions on all the three counts contained in the two indictments were consolidated in the final judgment and the petitioner was sentenced to imprisonment for one term of five years.

7. McLawhorn claims the four-month delay between the alleged illegal activities and the arrest denied him due process of law and his rights under the Sixth Amendment. The Sixth Amendment is applicable only after a person has been accused of a crime; the relevant statute of limitations protects against preaccusation delay. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L. Ed.2d 468 (1972). Where an unreasonable preaccusation delay is shown to have impaired the defendant's ability to defend himself, there may be a denial of due process which precludes prosecution. Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210 (1965). In light of our ultimate decision we find it unnecessary to consider this issue.

8. It is clear that McLawhorn was acquainted with the informant; however, the extent of that acquaintanceship is not disclosed and the informant may have been known only by an alias. There is some evidence in the record that the person McLawhorn suspected was the informant had left the jurisdiction and could not be located by the defense. The State refused to reveal the informant's

**4**

From his conviction and sentence on the three counts McLawhorn unsuccessfully appealed to the North Carolina Court of Appeals. An attempted appeal to the Supreme Court of North Carolina was denied for failure to raise a substantial constitutional question. An application for a writ of habeas corpus was denied by the district court in a memorandum opinion. We grant a certificate of probable cause for appeal and consider the petition on its merits.

## II

Petitioner contends that the State may not conceal facts concerning the true identity, present whereabouts, and status of an "informant" to whom delivery of the drug was made and who alone made all arrangements for the sale.[9]

Although this circuit has not had previous occasion to examine fully the limits of the nondisclosure privilege,[10] decisions of other circuits and the Supreme Court are persuasive. After reviewing those cases and taking into account underlying policy considerations, we conclude that the State could not properly claim the nondisclosure privilege under the facts of this case.

■ The leading case involving the right of an accused to require disclosure of the identity of an informant is Roviaro v. United States, 353 U.S. 53, 77 S. Ct. 623, 1 L.Ed.2d 639 (1957). There the Court characterized the problem as one calling for the balancing of the public interest in protecting the flow of information respecting criminal activities against the individual's right to prepare his defense. No fixed rule with respect to disclosure was established by the Court. Whether nondisclosure is warranted must depend upon the particular circumstances of each case, taking into consideration the crime charged and the possible defenses, the possible relevance and significance of the informant's testimony, and other related factors. Roviaro v. United States, supra, 353 U.S. at 62, 77 S.Ct. 623; Miller v. United States, 273 F.2d 279, 281 (5 Cir. 1959); Gilmore v. United States, 256 F.2d 565, 566 (5 Cir. 1958).

■ The public interest referred to by the Supreme Court in Roviaro, supra, concerns the prevention, detection, and prosecution of criminal acts. We are keenly aware that law enforcement officers dealing with a large number of crimes, especially in the area of the narcotics traffic, must depend upon informants to furnish information concerning criminal activities; privileged communications of this nature must be encouraged if law enforcement officers are to be held to the task of solving and prosecuting crime; if the identity of the informant must be routinely disclosed undoubtedly such sources of information would disappear almost immediately. Still, this valid public interest must be balanced against the individual's right to prepare a defense. The privilege of nondisclosure must give way where disclosure is essential or relevant and help-

true name or current address or divulge whether the informant was still actively assisting the police despite defense requests for that information.

9. The petitioner did not specifically argue that the informant was a participant in the transportation and possession or that the State could not properly withhold his identity on those counts. Counsel for the petitioner and the State have treated this error on appeal in the state courts and in this petition for habeas relief as a single question: whether the convictions and sentence should be set aside on the ground that the refusal to reveal the informant's identity denied fundamental fairness. We have examined this issue as to each distinct charge and conclude that since the informant played a

part with the petitioner in the very transaction upon which the State relies to prove illegal transportation, possession and sale of cocaine, he was entitled to require the State to reveal the identity of the informant with respect to all of the charges arising from that transaction. See notes 14, 15, and 16 infra.

10. We have previously recognized the privilege to withhold the identity of an informant. United States v. Fisher, 440 F.2d 654 (4 Cir. 1971); United States v. Pitt, 382 F.2d 322 (4 Cir. 1967); United States v. Whiting, 311 F.2d 191 (4 Cir. 1962). In each of these cases the informant was a mere tipster who supplied information sufficient to show probable cause for the issuance of a search warrant.

ful to the defense of the accused, lessens the risk of false testimony, is necessary to secure useful testimony, or is essential to a fair determination of the case. Roviaro v. United States, *supra;* Miller v. United States, *supra;* Gilmore v. United States, *supra;* Portomene v. United States, 221 F.2d 582 (5 Cir. 1955); Sorrentino v. United States, 163 F.2d 627 (9 Cir. 1947). Limitations on the privilege of nondisclosure arise from the Fourteenth Amendment's requirement of fundamental fairness to the accused. Roviaro v. United States, *supra;* Benton v. Maryland, 395 U.S. 784, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969).

 In undertaking to balance the interests here involved we look to the decisions of the Supreme Court and of other circuits as they appear properly applicable to the particular circumstances and relevant factors of this case. It is important to determine those who have been treated by the courts as tipsters as distinguished from those labeled as "participants." In determining whether invocation of the privilege of nondisclosure is to be sustained a distinction has frequently been made based on the nature of the informant's activities, that is, whether the informant is an active participant in the offense or is a mere tipster who supplies a lead to law enforcement officers to be pursued in their investigation of crime.[11] Applying this distinction, disclosure of the informant's identity is required where the informant is an actual participant, particularly where he helps set up the criminal occurrence. Roviaro v. United States, *supra;* Gilmore v. United States, *supra;* Porto-

mene v. United States, *supra;* United States v. Conforti, 200 F.2d 365 (7 Cir. 1952); Sorrentino v. United States, *supra.* Therefore, one of the factors tending to show that the prosecution is not entitled to withhold from the accused information as to the identity of an informant is the qualification of the informant to testify directly concerning the very transaction constituting the crime.[12]

 On the other hand, the privilege of nondisclosure ordinarily applies where the informant is neither a participant in the offense, nor helps set up its commission, but is a mere tipster who only supplies a lead to law investigating and enforcement officers. Miller v. United States, *supra;* Williams v. United States, 273 F.2d 781 (9 Cir. 1959); Anderson v. United States, 106 U.S. App.D.C. 340, 273 F.2d 75 (1959); Pegram v. United States, 267 F.2d 781 (6 Cir. 1959); United States v. Conforti, *supra;* Sorrentino v. United States, *supra.* This appears to be the generally accepted rule where the informant merely provides a lead or tip that furnishes probable cause for a search and seizure. Ordinarily, knowledge of the identity of a tipster would not be essential in preparing the defense of the accused and the public interest in protecting such informants should weigh heavily in favor of nondisclosure.[13] However, where the informant is an actual participant, and thus a witness to material and relevant events, fundamental fairness dictates that the accused have access to him as a potential witness. In such instances disclosure of identity should be required.

11. In *Roviaro* it was held error for the trial court to deny, prior to trial, an accused's demand for a bill of particulars as to a participating informant's identity and address where the accused was charged with illegal transportation and sale of heroin. The Court noted that the informant "helped to set up the criminal occurrence and had played a prominent part in it." 353 U.S. at 64, 77 S.Ct. at 629. The Court concluded that when the informant's name and address were thus requested, the prosecution should have been required to supply the information or suffer dismissal of that count.

12. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); Miller v. United States, 273 F.2d 279 (5 Cir. 1959); Gilmore v. United States, 256 F.2d 565 (5 Cir. 1958). This is not to say that the informant's mere physical presence at the scene of the alleged crime would be sufficient to hold him a participant and thus affect the nondisclosure privilege. Miller v. United States, *supra.*

13. The seemingly impossible task of balancing these interests without being aware of the relevancy of the information possessed by the informant, be he merely a tipster or

**6**

The facts in the case at bar clearly indicate that the informant was a participant in the incident which resulted in the arrest and conviction of petitioner. The unidentified informant initially suggested that petitioner dealt in drugs. There is evidence that he made confidential telephone calls to petitioner in an attempt to arrange a sale. He made the initial face-to-face contact with the petitioner, conversed with him several moments in private and then introduced him to Daughtry. The informant, riding in the front seat with petitioner while Daughtry rode in the back seat, observed and engaged in the negotiations for the sale. He actually took delivery of the drug, passed the package back to Daughtry, and paid at least a part of the purchase price with money he had on his person. It is apparent that the informant engineered the events leading up to the criminal occurrence and was a material witness who could testify directly from personal knowledge concerning the transportation,[14] possession,[15] and sale [16] of cocaine. Indeed his testimony was mandated in order to accomplish the purpose of a criminal trial—finding the truth. It is our view that participation by the informant is the essential distinction and we conclude that the prosecution's claim of the nondisclosure privilege should have been denied by the trial court. Quoting from *Roviaro, supra,* which seemingly cannot be materially distinguished from the case at bar, we note that:

"His [the informant's] testimony might have disclosed an entrapment. He might have thrown doubt upon pe-

a participant, can be obviated by utilizing an *in camera* hearing. The Third Circuit has approved such hearings in informant cases and has described the procedure in the following language:

"[T]he trial judge conducted an in camera confrontation with the informer, who was made to take the oath and testify as to any relevant knowledge he had pertaining to the crime. A record of that in camera session was transcribed and sealed so that only an appellate court would have access to its contents. The advantage of the procedure is that it enables the court to view with a keener perspective the factual circumstances upon which it must rule and attaches to the court's ruling a more abiding sense of fairness than could otherwise have been realized."

United States v. Jackson, 384 F.2d 825, 827 (3 Cir. 1967). Under this procedure the defendant is not compelled to show need and the trial court is not left to mere speculation as to the materiality of the informant's testimony.

14. In *Roviaro* the defendant was convicted of illegal sale and transportation of heroin. On appeal to the Supreme Court of the United States the Government did not defend its failure to disclose the informant's identity with respect to the conviction on the sale count but argued that the informant did not sufficiently participate in the transportation to compel disclosure for a conviction on that count. The Court reversed the conviction, specifically responding to the Government's argument by noting that the informant was so closely involved in the criminal occurrence and the evidence introduced at trial was so closely related to the informant that disclosure was essential to a fair trial on all counts.

We reach the conclusion that the informant's participation in the transportation aspect of *Roviaro* cannot be materially distinguished from the informant's participation in the case at bar.

15. United States v. Conforti, 200 F.2d 365 (7 Cir. 1952).

*Roviaro* indicates that if the participation of the informant in the transaction was such as to make him a relevant and material witness to the sale then his testimony should be available to the accused on all charges arising from that criminal occurrence. 353 U.S. at 63, 77 S.Ct. 623.

16. Roviaro v. United States, *supra*; Portomene v. United States, 221 F.2d 582 (5 Cir. 1955). In both of these cases the informant was the unidentified party who was charged in the indictment as the buyer of drugs. Hence, "it was evident from the face of the indictment that . . . [the informant] was a participant in and a material witness to that sale." Roviaro v. United States, 353 U.S. at 65 n. 15, 77 S.Ct. at 630. The Court in *Roviaro*, however, noted that the disclosure of the informant's identity is appropriate even when he "is not expressly mentioned . . . [in the indictment, if the] charge, when viewed in connection with the evidence introduced at the trial is so closely related to . . . [the informant] as to make his identity and testimony highly material." 353 U.S. at 63, 77 S.Ct. at 629.

titioner's identity or on the identity of the package. He was the only witness who might have testified to petitioner's possible lack of knowledge of the contents of the package that he 'transported' . . . . The desirability of calling . . . [informant] as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide." Roviaro v. United States, 353 U.S. at 64, 77 S.Ct. at 629.

This rule with respect to an informant's participation protects the interests to be balanced. It does not tend to curtail the necessary flow of information of criminal activities since the privilege of nondisclosure may be invoked where the informant is a mere tipster. The rule also operates to protect the accused in the proper preparation of his defense. Where participation, per se, qualifies the informant as a material witness, to require the accused to present proof of a need for the informant's testimony, as would the district court in this case, places an unjustifiable burden on the defense.[17] Evidence of entrapment, misidentification, intent, or knowledge often is available only to those who actively participate in the transaction; unless the accused waives his Fifth Amendment right to remain silent, and testifies, he is forced to rely upon prosecution witnesses to provide proof of need. A more compelling in-

stance is where the participating informant alone contrived and perpetrated an entrapment,[18] as contended by petitioner in the case at bar. In such circumstances the accused could show a need for disclosure of the identity of the informant, a material witness, only by testifying to the facts of entrapment.

### III

■ We find no merit in the contention here that any error inherent in the prosecution's failure to reveal the identity of the informant was waived. Petitioner first sought to learn the identity of the informant by questioning Detective Daughtry at the hearing on the motion to dismiss the indictment; an objection to the question was made by the prosecution and was sustained by the court. At trial petitioner again asked the name of the confidential informant and whether he was still acting as an informant; again the court promptly sustained objections to these questions.

■ The State argues that even if the refusal to reveal the informant's identity was error it was not prejudicial. While it is true that petitioner made no effort to subpoena the informant as a witness his every effort to obtain sufficient information to secure a subpoena was thwarted. Admittedly he did not tell the court in so many words that he needed the informant's name so that he could be called as a witness but, at the hearing on the pretrial motion to dis-

17. The majority in *Roviaro* clearly did not require the petitioner to present evidence of entrapment or other need to overcome the claim of privilege of nondisclosure where the informant was an actual participant in the offense charged.

Justice Clark, dissenting in *Roviaro*, argued that the accused must demonstrate need before disclosure is proper. He noted: "The petitioner has not mentioned a single substantial ground essential to his defense which would make it necessary for the Government to name the informer. The Court mentions that there might have been entrapment. Petitioner not only failed to claim entrapment but his counsel appears to have rejected any suggestion of it in open court. . . . It should be noted that petitioner's counsel stated

in open court that petitioner knew the informant and believed he was dead." 353 U.S. at 69, 77 S.Ct. at 632. (footnote omitted).

Justice Clark's view was clearly rejected by the Court.

18. The occasional instance of entrapment is most likely to occur when the purchase of drugs is made outside of police supervision. The payment of contingent fees to informants, the use of informants who are drug addicts, promises of immunity and pay-offs in drugs create a self-interest on the part of the informant. This self-interest in "making a buy" may lead to excessive appeals to the seller's sympathies or other unconscionable tactics. *See* Note, 31 U.Chi.L. Rev. 137 (1963).

miss, McLawhorn's attorney stated that "witnesses are not available to this defendant to show entrapment." This statement clearly alerted the court to the purpose of the questions.[19] McLawhorn cited the refusal of the State to identify the informant as prejudicial error in all subsequent appeals and in this petition for habeas relief. This question was clearly and fully presented to the state courts, to the district court, and is properly before this court.

The judgment of the district court is reversed and the case is remanded with directions that petitioner be released and discharged from custody unless the State of North Carolina shall elect to retry him within a reasonable period of time to be fixed by the court.

Reversed and remanded.

19. The record indicates the defense was unable to locate the informant. The use of an alias or a change of occupation and residence by a participating informant may well render useless information obtained through a very casual acquaintanceship. See Portomene v. United States, 221 F.2d 582 (5 Cir. 1955). Only by disclosing all material information, especially informant's true name and address (see Roviaro, supra) does the prosecution discharge its duty under the due process clause. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 765, 31 L.Ed.2d 104 (1971) ; Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).