**Alexandria**

MICHAEL F. KEENER

v.

COMMONWEALTH OF VIRGINIA

No. 0344-87-4

Decided May 16, 1989

COUNSEL

Marvin D. Miller, for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BENTON, J.**—Michael Keener was convicted of possession with intent to distribute a controlled drug, phencyclidene (PCP) in violation of Code § 18.2-248. Prior to trial, the judge entered an order granting Keener's requests for all exculpatory and discovery material. Keener argues that he was entitled to a mistrial because the prosecution failed to reveal, until after the commencement of the proceedings, the identity of an informant, whose testimony might have been material to Keener's defense. We agree, and for the reasons which follow, we reverse the conviction and remand the case for a new trial.

At trial, June Boyle, an undercover police investigator, testified that she met Keener for the first time in early June in a parking lot and told Keener that she was interested in getting PCP. She testified that Keener "said he thought he could help out, do something." Except for that conversation, no transaction occurred at that time. Boyle testified that she next met Keener a week later at an address on "Wildwood Street or Road." Keener was going to the District of Columbia and "had to have the rest of the money to get the [PCP]." She further testified that she gave him $60 and that she expected "to get five cans of finished PCP" for which she was to pay $300. Keener left for the District of Columbia, was observed making the buy, and was arrested on his way back to the house where Boyle was waiting.

On cross-examination, Boyle testified for the first time that the second meeting with Keener was arranged by "[a] girl named Nancy." She further disclosed that Nancy's last name was "Martin." Keener's counsel asked whether Nancy's last name was instead "Staples." Boyle reaffirmed that Nancy's last name was "Martin." Boyle also testified that she had made a mistake when she testified on direct examination that Martin lived on "Wildwood Street or Road" and confirmed that Martin lived on

Willowood Street.

After the Commonwealth rested its case, Keener called police investigator Thomas Polhemus as a witness. Polhemus testified that his report of the offense referred to the "confidential informant's house," which was determined to be on Willowood Street. Keener's counsel then moved for a mistrial on the ground that, despite the entry of the discovery order, the Commonwealth had failed to disclose exculpatory evidence concerning Martin's role as an informant and agent of the Commonwealth. As a part of the motion, Keener's counsel alleged, without challenge, that unbeknownst to Keener, Martin had been charged with distribution of PCP and was cooperating with the police as a confidential informant. Keener's counsel also alleged that, in return for her assistance, Martin was convicted of the reduced charge of possession of a schedule III substance and was placed on probation upon the special terms and conditions permitted by Code § 18.2-251. The trial judge denied the motion, offering instead to continue the proceedings in order to allow counsel an opportunity to "explore . . . any way . . . to use that information." After Keener declined the offer of a continuance, the trial proceeded and Keener was convicted by the jury.

At a post-trial hearing on a motion to set aside the verdict, Keener testified and offered as evidence a statement of facts. That evidence disclosed that on June 2, 1986, Keener was approached in a parking lot by a former girlfriend, Nancy. Nancy Martin was known to Keener, not by the surname "Martin," but as "Nancy Madieras" or "Nancy Staples." Martin was accompanied in the parking lot by June Boyle. At this initial meeting with Keener, Martin and Boyle expressed an interest in obtaining some "juice" or liquid PCP. Keener stated that he later met with Martin alone on three different occasions prior to visiting her house on June 17. On two of those occasions Martin again told him that she was interested in PCP. On one of those occasions, Keener stated that Martin engaged in "heavy petting" with him while wearing a two piece bathing suit and drinking several beers. He further stated that Martin then gave him money to purchase PCP and offered sexual favors to him provided he made the purchases. Keener related that on June 17 Martin repeated the offer of sexual favors while he was at her house. During that same visit, Boyle handed him the additional $60 that he needed to purchase the PCP.

## I

■ Although no general constitutional right to discovery exists in a criminal case in this Commonwealth, *Stotler v. Commonwealth*, 2 Va. App. 481, 483, 346 S.E.2d 39, 40 (1986), due process requires that the prosecution produce evidence favorable to the accused upon request when that evidence is material either to guilt or to punishment. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Lowe v. Commonwealth*, 218 Va. 670, 679, 239 S.E.2d 112, 118, *cert. denied*, 435 U.S. 930 (1977); *Walker v. Commonwealth*, 4 Va. App. 286, 300, 356 S.E.2d 853, 861 (1987). Disclosure is required only if the evidence is both favorable to the accused and material either to guilt or to punishment. *United States v. Bagley*, 473 U.S. 667, 674 (1985).

■ As a general rule, the identity of a person furnishing information to the prosecution concerning criminal activities is privileged. *Gray v. Commonwealth*, 233 Va. 313, 328, 356 S.E.2d 157, 165 (1987). In *Roviaro v. United States*, 353 U.S. 53 (1957) however, the Supreme Court recognized that fundamental fairness requires that this privilege give way whenever disclosure of an informer's identity or the content of the informer's communication "is relevant and helpful to the defense of the accused, or is essential to a fair determination of a cause." 353 U.S. at 60-61; *see also United States v. Price*, 783 F.2d 1132, 1137 (4th Cir. 1986). In concluding that the circumstances required disclosure in *Roviaro*, the Court stated:

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

353 U.S. at 62.

■ In weighing the possible significance of the informer's testimony to the defense, a distinction must be drawn between an in-

former who is an active participant in the offense and the mere tipster. *Price*, 783 F.2d at 1138; *United States v. Barnes*, 486 F.2d 776, 778-79 (8th Cir. 1973); *McLawhorn v. State*, 484 F.2d 1, 5 (4th Cir. 1973); *see also Gray*, 233 Va. at 328-29, 356 S.E.2d at 165. The reason for this distinction is that "[o]rdinarily, knowledge of the identity of a tipster would not be essential in preparing the defense of the accused . . . . However, where the informant is an actual participant, and thus a witness to material and relevant events, fundamental fairness dictates that the accused have access to him as a potential witness." *McLawhorn*, 484 F.2d at 5. Thus, " 'disclosure of the informant's identity is required where the informer is an actual participant, particularly where he helps set up the criminal occurrence.' " *Price*, 783 F.2d at 1138 (quoting *McLawhorn*, 484 F.2d at 5); *see also Barnes*, 486 F.2d at 778-79 ("where the witness is an active participant or witness to the offense charged, disclosure will almost always be material to the accused's defense").

Keener has sufficiently established that Nancy Martin, known to him as "Nancy Staples" or "Nancy Madieras," was an actual participant in the events which culminated in Keener's arrest and conviction. The record reveals that it was Martin who knew Keener and who first approached him. She introduced him to her "friend," the undercover officer Boyle, and either one or both expressed interest in obtaining PCP. According to the testimony of Boyle, Martin arranged the second meeting between the parties, which occurred at Martin's home. Martin's home also provided the setting for the conclusion of the criminal transaction. The parties apparently had agreed to meet back at Martin's home after Keener made the purchase in the District of Columbia. Thus, we can say here, as did the court in *Price*, that "the informant in this case did much more than tip off the government . . . . The informant set up the deal. [She] was a necessary party to the . . . negotiations which led to the attempted sale." 783 F.2d at 1139; *see also McLawhorn*, 484 F.2d at 6 ("informant engineered the events leading up to the criminal occurrence and was a material witness who could testify directly from personal knowledge concerning the transportation, possession, and sale of cocaine").

█ As in *Roviaro*, the informant's testimony in this case "might have tended to show an entrapment." 353 U.S. at 64. Keener argues that Martin, a former girlfriend, offered "sexual

favors" in return for his cooperation in the criminal transaction. Given that Martin was working for the Commonwealth and, as a consequence of her cooperation, obtained a reduction of her own charges and probation under Code § 18.2-251, Keener's suggestion that Martin may have used such measures in order to obtain his compliance is not implausible. Whenever the informant has a stake in the arrest of the accused, the risk of entrapment is increased. *Price*, 783 F.2d at 1139. As the court noted in *Barnes*:

> The Government must know that an eager informer is exposed to temptations to produce as many accuseds as possible at the risk of trapping not merely an unwary criminal but sometimes an unwary innocent as well. One could hardly expect such informants always to stay on the proper side of the line which separates those two cases. *And since the Government chooses to utilize such agents, with the attendant risk of entrapment, it is fair to require the Government which uses this inherently dangerous procedure to take appropriate precautions to insure that no innocent man should be punished.*

486 F.2d at 780 (quoting *Vellarde-Villarreal v. United States*, 354 F.2d 9, 13 (9th Cir. 1965)). We cannot say, under the circumstances suggested in this record, that it is incredible to believe that a jury would either accept Keener's defense of entrapment or consider it in mitigation of punishment. Resolution of these factual questions was wholly within the province of the jury. *See Renzi v. Commonwealth*, 794 F.2d 155, 159 (4th Cir. 1986)("We . . . are not the fact finders, and this appeal should not be resolved on the basis of our supposition that one set of facts is more probable than another").

The Commonwealth argues that its failure to disclose Martin's identity was not prejudicial to Keener's defense because Keener already knew Martin's identity. *See Roviaro*, 353 U.S. at 60 n. 8 (citing *Sorrentino v. United States*, 163 F.2d 627 (9th Cir. 1947)). On the record before us, this argument is not persuasive. The record reveals that Keener knew Martin personally. He also stated that she was his ex-girlfriend. The fact that Keener knew Martin personally, however, does not lead inevitably to the conclusion that he knew that she, not Boyle or some other person, was the informant in this case. *See Churder v. United States*, 387 F.2d

825, 831 (8th Cir. 1968)(issue of whether disclosure is relevant and helpful to defense does not disappear where person is informant but defendant does not know this fact). It is the fact of Martin's status as an informant which would have established Martin's status as agent, giving rise to the defense of government entrapment. *See Stamper v. Commonwealth*, 228 Va. 707, 715, 324 S.E.2d 682, 687 (1985). Absent this fact, there would have been no need for Martin's testimony regarding her possible entrapment of Keener. It is not implausible that suspicion whether Martin was the informer in the case was apparently put to rest when, as suggested by Keener's counsel, a review of court records under the names "Staples" or "Madieras" disclosed no arrests or charges under either surname. Moreover, Keener himself would have less reason to suspect an old friend than a complete stranger, such as Boyle. The trial court made no factual finding that Keener actually knew in advance of trial that Martin was the informant, and we are unwilling to presume facts not in the record. *See Roviaro*, 353 U.S. at 60 n.8.

Thus, we conclude on the basis of the record before us that disclosure of Martin's identity as informant would have been "relevant and helpful" to Keener's defense and that for this reason any informer's privilege, otherwise applicable, must give way. *See Roviaro*, 353 U.S. at 60-61. We do recognize, as the Commonwealth correctly points out, that *Roviaro* involved a request for disclosure of a specific name and that the defense in this case did not at any time make such a specific request for disclosure of the identity of the informant Martin. The defense did however, by pretrial motion, make a general request for discovery and for exculpatory evidence pursuant to *Brady*. Having determined that the identity of the informant was "relevant and helpful" to Keener's defense under *Roviaro*, we find that this information falls within the *Brady* rule in that "[s]uch evidence is 'evidence favorable to an accused' . . . so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." *United States v. Bagley*, 473 U.S. 667, 676 (1985).

## II

Evidence is material either to guilt or to punishment under *Brady* if there exists a " 'reasonable probability that, had the evi-

dence been disclosed to the defense, the result of the proceeding would have been different.'" *Taitano v. Commonwealth*, 4 Va. App. 342, 349, 358 S.E.2d 590, 594 (1987)(quoting *Bagley*, 473 U.S. at 682). A reasonable probability is one that is sufficient to undermine confidence in the outcome of the trial. *Id.* In the present case, the Commonwealth's failure to disclose the identity of the informant until after the commencement of the proceedings clearly had an effect on Keener's defense. Information that the ex-girlfriend was a government agent could have given rise to a defense of entrapment, which if accepted by the jury, would have resulted in Keener's acquittal. *See Walker*, 4 Va. App. at 300, 356 S.E.2d at 861. In addition, even if not accepted by the jury as a complete defense, such information might have been considered by the jury in mitigation of punishment. In this respect, the evidence could have been material to the question of guilt as well as to the question of appropriate punishment. Thus, a significant question is raised as to whether the outcome of the trial itself, or Keener's sentence, might have been different if the Commonwealth had disclosed the identity of the informant prior to trial. We echo the concerns articulated by this Court in *Walker*:

> [I]f the subject matter of . . . a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge.

4 Va. App. at 301, 356 S.E.2d at 861. Under the circumstances presented here, we find that the Commonwealth's failure to disclose Martin's informant status until commencement of the proceedings prejudiced Keener's right to a fair trial.

We also find that the trial court's proposal to grant a continuance of the proceedings represented an inadequate remedy to the breach of duty that occurred. By the time the defense learned the identity of the informant, the jury had been selected and sworn, opening statements made, and testimony of the prosecution's witnesses commenced. No amount of additional time could have compensated for the lost opportunity to select jurors who would be receptive to a potential entrapment or accommodation defense, to incorporate the defense into the opening statement, or to examine witnesses for the prosecution with this defense in mind.

Accordingly, we hold that the trial judge erred in denying Keener's motion for a mistrial and we reverse the conviction. The case is remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Duff, J., and Keenan, J., concurred.