COURT OF APPEALS OF VIRGINIA


Present:   Judges Haley, Petty and Powell
Argued by teleconference


DELONTE BRUCE SAMUELS

MEMORANDUM OPINION[*] BY

v.        Record No. 2849-09-3        JUDGE CLEO E. POWELL
                                       NOVEMBER 30, 2010

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
Robert M. D. Turk, Judge

(Joel S. Jackson; Joel S. Jackson, P.C., on brief), for appellant.
Appellant submitting on brief.

Donald E. Jeffrey, III, Senior Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General, on brief), for
appellee.


Delonte Bruce Samuels ("Samuels") appeals his conviction for distribution of cocaine.

On appeal, Samuels argues that the trial court erred in denying his motion to disclose the identity

of the confidential informant who was the only other participant in the transaction. Samuels

further contends that, once it was revealed that his attorney had previously represented the

confidential informant, the trial court erred in denying his motion for a continuance and his

attorney's motion to withdraw. For the reasons that follow, we affirm the decision of the trial

court.

BACKGROUND

The facts in this matter are not in dispute. On January 23, 2008, Samuels sold a quantity

of cocaine to a confidential informant working with Detective A.B. Durham of the Christianburg

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Police Department. On August 8, 2008, Samuels was indicted on a charge of distributing cocaine in violation of Code § 18.2-248(A).

In a pretrial motion, Joel Jackson, Samuels's attorney, sought to compel the Commonwealth to disclose the name, contact information, and criminal record of the confidential informant. At the March 2, 2009 hearing on the motion, only Detective Durham testified. During his testimony, the following colloquy occurred:

| | |
|---|---|
| [Commonwealth:] | [A]re you aware of any facts which caused you concern in revealing the identity of the confidential informant in this case? |
| [Det. Durham:] | Yes I am. |
| [Commonwealth:] | If you would, please tell the judge what those are. |
| [Det. Durham:] | I received a phone conversation from a[n] individual related to a separate case with Mr. Samuels that has been intimidated – |
| Mr. Jackson: | Judge, I'd object again. That's hearsay. |
| [Commonwealth:] | We are potentially laying – |
| [The Court:] | Well not necessarily for the truth of the matter but just why he believes what he believes, so I'll overrule the objection. |
| [Det. Durham:] | This individual had received threats from Mr. Samuels' family, uh, and I have spoken with another individual that has, uh, been intimidated to the point of threats of murder or bodily harm. |

It was subsequently revealed that the threats were made by Pamela Samuels, Samuels's mother, and Marcus Samuels, a close family member. Additionally, the Commonwealth also proffered, without objection, that Samuels had previously been convicted of murder.

After hearing all of the evidence, the trial court denied the motion, stating:

I think there are reasonable grounds from the Commonwealth that have been stated . . . concerns about why they do not wish to

- 2 -

> release the name of the informant and I think the only reason that the defendant wants to know is just so he can go talk to her and that's it . . . I don't think that is a sufficient enough reason to release her name versus the concerns by the Commonwealth . . . . While I think it's important for the informant to remain nameless at this point in time, all the other information has been made available insofar as the confidential informant's criminal activity, if any, and what . . . compensation was made to them that would allow you to go forward at least on those avenues of cross-examining the confidential informant.

Although the trial court denied Samuels's motion to disclose, at the hearing the Commonwealth revealed limited information about the confidential informant's criminal record, namely that the informant had not been convicted of any felonies or crimes involving moral turpitude.

At trial, the Commonwealth called as its first witness the confidential informant, revealing her identity as Sherry Yates ("Yates"). As she testified, it was revealed that Yates was a former client of Mr. Jackson. Mr. Jackson moved for a continuance and ultimately to withdraw as Samuels's attorney, arguing that he had a conflict of interest and could not pursue certain lines of questioning as a result. The trial court asked Mr. Jackson if he was aware of any confidential information arising out of his representation of Yates that he would have to reveal if he continued to represent Samuels. In response, Mr. Jackson stated, "I can't tell you one hundred percent that there is, but I have a strong trepidation about going forward with a client that I formerly represented or a current client."

The trial court then allowed the Commonwealth to voir dire Yates about Mr. Jackson's previous representation.

| | |
|---|---|
| [Commonwealth]: | Ms. Yates, what charge were you represented by Mr. Jackson? |
| Ms. Yates: | He represented me on a driving on suspended. |
| [Commonwealth]: | Okay, driving on a suspended license? |

- 3 -

| | |
|---|---|
| Ms. Yates: | Uh huh. |
| [Commonwealth]: | Any other charges? |
| Ms. Yates: | No sir. |

*　　*　　*　　*　　*　　*　　*

| | |
|---|---|
| The Court: | [D]id you speak to him about anything other than driving on a suspended license? |
| Ms. Yates: | I had a brief meeting with him for maybe five minutes. |
| The Court: | Regarding driving on a suspended license? |
| Ms. Yates: | He told me what the stipulations were for the charge and what I was going to get and when we came to court, that's what I got. |
| [Commonwealth]: | So you did not reveal anything that you would consider to be a personal confidence, something confidential, something secret to him? |
| Ms. Yates: | No. |

After further discussion, the trial court advised counsel that he was going to deny the motions "unless [Mr. Jackson] can tell me what about [his] representation of Mr. Samuels constitutes a conflict in trying to examine Ms. Yates." Mr. Jackson responded, "Judge, I mean, I can't come up with a reason at this time."

As he began to cross-examine Yates, Mr. Jackson specifically asked if she was "waiving any kind of privilege, attorney/client privilege pursuant to our previous representation," to which Yates replied, "Yes sir." Mr. Jackson then inquired as to why she agreed to work as a confidential informant. Yates explained that she had a family history of drug use, which included her, both of her parents, and her husband, Frankie Yates. Mr. Jackson then renewed his motion to withdraw, stating that he believed that he may have another conflict, as he may have

- 4 -

previously represented Frankie Yates. The trial court again denied the motion, because Mr. Jackson was not sure whether or not he actually represented Frankie Yates.

After hearing all of the evidence, the trial court found Samuels guilty of distribution of cocaine and sentenced him to ten years in prison, with five years suspended.

Samuels appeals.

## ANALYSIS

### 1. Identity of the Confidential Informant

Samuels argues that the trial court erred by refusing to reveal Yates's identity prior to trial. Specifically, Samuels contends that, because Yates was the only other actual participant in the transaction, under Roviaro v. United States, 353 U.S. 53 (1957), the Commonwealth was required to reveal her identity to him before trial so that he could properly prepare for trial. Samuels posits that the principles of fundamental fairness dictate that he have the opportunity to prepare his defense with Yates's identity in mind.[1]

It is well established that "the identity of a person furnishing the prosecution with information concerning criminal activities is privileged." Gray v. Commonwealth, 233 Va. 313, 328, 356 S.E.2d 157, 165 (1987). However, "where the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege [of nondisclosure] must give way." Roviaro, 353 U.S. at 60-61.

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime

---

[1] Although Samuels argues that he was denied the opportunity to "incorporate into his opening statement an entrapment or accommodation defense and to examine [Yates] with knowledge of this defense in mind," he never raised this issue before the trial court. Therefore, Rule 5A:18 bars our consideration of that specific argument.

charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

Id. at 62.

Under the Roviaro balancing test, a distinction is drawn "between informants who are participants in the criminal offense and those who are mere 'tipsters.'" Daniel v. Commonwealth, 15 Va. App. 736, 740, 427 S.E.2d 423, 425 (1993).

> Generally, where the informant is a tipster who merely supplies information, knowledge of his or her identity "'would not be essential in preparing the defense of the accused.'" Keener v. Commonwealth, 8 Va. App. 208, 213, 380 S.E.2d 21, 24 (1989) (quoting McLawhorn v. North Carolina, 484 F.2d 1, 5 (4th Cir. 1973)). On the other hand, in contrast to cases involving a mere tipster, "'where the informant is an actual participant, and thus a witness to material and relevant events, fundamental fairness dictates that the accused have access to him [or her] as a potential witness.'" Id. *Thus, disclosure of an informant's identity is required where the informant is an actual participant.*

Id. (emphasis added); see also McLawhorn, 484 F.2d at 5 ("disclosure of the informant's identity is required where the informer is an actual participant, particularly where he helps set up the criminal occurrence"); United States v. Barnes, 486 F.2d 776, 778-79 (8th Cir. 1973) ("where the witness is an active participant or witness to the offense charged, disclosure will almost always be material to the accused's defense").

However, this Court has previously recognized that, under certain circumstances, where the informant's identity is "disclosed by the evidence . . . the erroneous denial of disclosure is harmless error." Daniel, 15 Va. App. at 741, 427 S.E.2d at 426; but see Keener, 8 Va. App. at 216, 380 S.E.2d at 26 (reversing the conviction where "the Commonwealth's failure to disclose the identity of the informant until after the commencement of the proceedings clearly had an effect on [the defendant's] defense"). This would appear to be especially true where the informant testifies at trial. See, e.g., United States v. Perkins, 994 F.2d 1184, 1191 (6th Cir. 1993) (finding no error where the informant testified at trial, was subject to cross-examination,

and the defendant did not seek a continuance on grounds of unfair surprise); United States v.

Foster, 815 F.2d 1200, 1203 (8th Cir. 1987) (finding no error where the informant testified at

trial, was subject to extensive cross-examination, and the defendant did not request a continuance

or an opportunity to *voir dire* the informant); United States v. Pennick, 500 F.2d 184, 187 (10th

Cir. 1974) (finding no error where informant's testimony at trial "ruled out the possibility that

the [informant's] testimony could somehow be helpful to [the defendant]").  Assuming without

deciding that the trial court abused its discretion in denying Samuels's motion to disclose Yates's

identity, we hold that, under the facts of this case, such error is harmless.[2]

Here, Yates testified at trial.  She was subject to extensive cross-examination.  Samuels

never sought a continuance[3] on grounds of unfair surprise[4] and he never sought to *voir dire*

---

[2] Our assumption that the trial court's denial of Samuels's motion to disclose was facially erroneous renders Samuels's second question presented moot.

[3] We recognize that, at one point during Yates's testimony, Samuels sought a continuance; however, it is clear from the record that the request was related to the potential conflict of interest discussed below.

[4] Indeed, we note that Samuels was no more "unfairly surprised" by the testimony of Yates than he would have been by the testimony of any other witness for the Commonwealth whose name had not been divulged prior to trial.

The facts of this case make our previous holding in Keener, 8 Va. App. at 208, 380 S.E.2d at 21, inapposite.  In Keener, the defendant sought all exculpatory information possessed by the Commonwealth.  Thus, the issue in Keener was whether the Commonwealth's failure to disclose the identity of the informant before trial amounted to a Brady violation.  Finding it was a Brady violation, we held that the Commonwealth's failure prejudiced the defendant, because

> By the time the defense learned the identity of the informant, the jury had been selected and sworn, opening statements made, and testimony of the prosecution's witnesses commenced.  No amount of additional time could have compensated for the lost opportunity to select jurors who would be receptive to a potential entrapment or accommodation defense, to incorporate the defense into the opening statement, or to examine witnesses for the prosecution with this defense in mind.

Id. at 216, 380 S.E.2d at 26.

Yates on the basis of her knowledge.  Additionally, Yates's testimony makes clear that she did not possess any information about the crime that could somehow be helpful to Samuels.[5] Accordingly, even assuming that the trial court erred in denying Samuels's motion to disclose, because Yates actually testified at trial, such error was harmless.

## 2.  Conflict of Interest

Samuels argues that the trial court erred in denying his motion for a continuance and his counsel's motion to withdraw when it was discovered that Samuels's attorney had previously represented Yates and possibly her estranged husband.  Samuels contends that he was denied a fair trial because Mr. Jackson had "strong trepidation" in cross-examining a former client and therefore could not zealously cross-examine her.  The Commonwealth, however, contends that because Yates waived her attorney-client privilege, there was no conflict of interest.

The Sixth Amendment to the Constitution guarantees that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  The purpose of this guarantee has been recognized as "simply to ensure that criminal defendants receive a fair trial."  Strickland v. Washington, 466 U.S. 668, 689 (1984); see also Wheat v. United States, 486 U.S. 153, 159 (1988) ("the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant . . .").  "Accordingly, any

---

In the present case, Samuels did not argue that a Brady violation occurred.  Additionally, unlike Keener, this case was a bench trial, and therefore there could be no effect on jury selection.  The defenses of entrapment and accommodation were still available to Samuels; however, he chose not to pursue them.  Similarly, the Commonwealth's first witness was Yates, therefore any examination of the Commonwealth's witnesses would necessarily have been done with Samuels's defense strategy in mind.  Also, if Samuels had been unfairly surprised, a request for a continuance would have allowed him to prepare to address the surprise.  However, as we previously stated, he made no request for a continuance on the grounds of unfair surprise.

[5] The fact that Samuels's version of events (i.e., that he wasn't the person who sold drugs) was in direct contravention of Yates's version further supports this point.

deficiencies in [defense] counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Strickland, 466 U.S. at 691-92.

However, "prejudice is presumed when [defense] counsel is burdened by an actual conflict of interest. In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties." Id. at 692; see also Cuyler v. Sullivan, 446 U.S. 335, 349-50 (1980) ("a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief").

The Supreme Court has tacitly recognized that an actual conflict of interest exists where an attorney's ability to conform with the ABA Code of Professional Responsibility[6] is impaired. Wheat, 486 U.S. at 162.

> "Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future attacks over . . . the fairness of the proceedings in his own court . . . ."

Id. (quoting United States v. Dolan, 570 F.2d 1177, 1184 (3d Cir. 1978)).

Thus, at the outset we must determine whether there was an actual conflict of interest and, if so, whether that conflict adversely affected Mr. Jackson's representation of Samuels. We are guided by Rule 1.7(a)(2) of the Virginia Rules of Professional Conduct, which states:

> A concurrent conflict of interest exists if . . . there is *significant risk* that the representation of one or more clients will be *materially limited* by the lawyer's responsibilities to another client,

---

[6] The ABA Code of Professional Responsibility was replaced by the ABA Model Rules of Professional Conduct in 1983. As both the ABA Code of Professional Responsibility and the ABA Model Rules of Professional Conduct serve the same purpose, prescribing the standard of ethics and professional responsibility for lawyers, we hold that the Supreme Court's rationale in Wheat applies equally to the ABA Model Rules of Professional Conduct, upon which the Virginia Rules of Professional Conduct are based.

> a former client or a third person or by a personal interest of the lawyer.

(Emphasis added).

Rule 1.7(a)(2) of the Virginia Rules of Professional Conduct makes it clear that a potential conflict of interest does not amount to an actual conflict of interest unless there is a "significant risk that the representation of one or more clients will be materially limited." In United States v. Young, 644 F.2d 1008 (4th Cir. 1981), the Fourth Circuit examined a similar, although factually distinguishable, argument. The court held that, where a trial court is alerted to a potential conflict of interest, the proper course of action is to hold an evidentiary hearing to explore the nature of the conflict. At the evidentiary hearing, the trial court can inquire of the attorney with the potential conflict whether he received any information during his representation of his former client that could be used on cross-examination to buttress his current client's case. Id. at 1013-14. "An inquiry of this nature accords great weight to a lawyer's perception of a conflict, but . . . 'courts necessarily rely in large measure upon the good faith and good judgment of defense counsel' in determining whether an actual conflict of interest exists." Id. at 1014 (quoting Cuyler, 446 U.S. at 347).

Finding the logic of the Fourth Circuit to be applicable to the present case, we hold that where a party alerts the trial court to a potential conflict of interest due to an attorney's previous representation of a witness, the proper course of action is for the trial court to investigate, in some fashion, the potential conflict of interest. The trial court should focus primarily on whether the attorney received any confidential information[7] from the former client that is beneficial to the

---

[7] For obvious reasons, the trial court should avoid investigating the nature or content of the confidential information.

- 10 -

current client.[8]  If the investigation reveals that the attorney does not possess any such information, there is no significant risk that the attorney's representation of the current client will be materially affected, and therefore, no conflict of interest exists.  If, however, the investigation reveals that the attorney does possess such information, there is a significant risk that the attorney's representation of the current client will be materially affected, and therefore, a conflict of interest exists.

In the present case, the record establishes that Mr. Jackson did not recall anything about his previous representation of Yates, other than the fact that he had previously represented her.  Additionally, the trial court went a step further and allowed the Commonwealth to *voir dire* Yates about Mr. Jackson's previous representation.[9]  According to Yates, she only had a brief, five-minute meeting with Mr. Jackson and did not reveal anything that she would consider to be a personal confidence to him.  As such, there was no risk, significant or otherwise, that Mr. Jackson's representation of Samuels was materially affected.  Accordingly, there was no conflict of interest and the trial court was correct in allowing the trial to proceed.

---

[8] The fact that the attorney may have received confidential information from the former client does not, in itself, create a conflict of interest.  Where the information received is neutral or detrimental to the current client, it unlikely that the attorney's responsibilities toward his former client will pose a *significant risk* that the attorney's representation of the current client will be *materially affected*.

[9] Yates unequivocally waived her attorney-client privilege with regard to her previous representation by Mr. Jackson.  Her waiver is relevant with regard to the trial court's investigation into the nature of the information Mr. Jackson received and Mr. Jackson's subsequent cross-examination of Yates.  See Rule 1.6(a) of the Virginia Rules of Professional Conduct (recognizing that the attorney-client privilege belongs to the client, not the attorney).  Without a waiver by Samuels, however, Yates's waiver alone is not dispositive of Mr. Jackson's ability to continue to represent Samuels.  See Rule 1.7(b) of the Virginia Rules of Professional Conduct ("Notwithstanding the existence of a concurrent conflict of interest . . . a lawyer may represent a client if *each* affected client consents after consultation . . . ." (emphasis added)).

## CONCLUSION

For the foregoing reasons, we hold that any error on the part of the trial court in denying Samuels's motion to reveal Yates's identity prior to trial was harmless. Further, we affirm the decision of the trial court denying Samuels's motion to continue and Mr. Jackson's motion to withdraw, as there was no significant risk that Mr. Jackson's previous representation of Yates would materially affect his current representation of Samuels.

Affirmed.
